RADTKE v EVERETT

Docket No. 121611. Submitted November 7, 1990, at Grand Rapids. Decided May 20, 1991, at 9:15 A.M. Leave to appeal sought.

Tamara J. Radtke brought an action in the Grand Traverse Circuit Court against Stuart B. Everett and Clarke-Everett Dog and Cat Hospital, P.C., claiming, on the basis of a single incident, sexual harassment in the workplace, constructive discharge from her employment, and assault and battery. The court, William R. Brown, J., granted the defendants summary disposition with respect to the sexual harassment and constructive discharge claims on the basis that a single act would not support a finding of sexual harassment within the meaning of the Civil Rights Act, and with respect to the assault and battery claim on the basis that it was precluded by the exclusive remedy provision of the Workers' Disability Compensation Act. The plaintiff appealed.

The Court of Appeals *held*:

1. Because a standard which views sexual harassment of a female from the perspective of a gender-neutral "reasonable person" has a tendency to have a male bias, claims by women of sex discrimination in the workplace as a result of sexual harassment should be viewed from the perspective of a "reasonable woman." Under the reasonable woman standard, an actionable claim within the meaning of the Civil Rights Act for sex discrimination caused by sexual harassment in the workplace is stated where a woman alleges conduct of a sexual nature which a reasonable woman would consider to be sufficiently severe or pervasive to alter her conditions of employment by substantially interfering with her employment or to create an intimidating, hostile, or offensive employment environment. Under certain circumstances, the offensive nature may be so severe that a single incident will be sufficient to support a finding of sexual harassment. Because a jury might find that the claimed incident constituted sexual harassment, it

REFERENCES

Am Jur 2d, Job Discrimination § 804.

See the Index to Annotations under Reasonableness; Sex Discrimination.

was error for the trial court to grant summary disposition of the sexual harassment and constructive discharge claims.

2. The exclusive remedy provision of the Workers' Disability Compensation Act does not bar the plaintiff's assault and battery claim, because it was brought against Dr. Everett individually, rather than against the employer, Clarke-Everett Dog and Cat Hospital, P.C.

Reversed and remanded.

1. CIVIL RIGHTS — SEX DISCRIMINATION — SEXUAL HARASSMENT — REASONABLE WOMAN STANDARD — CIVIL RIGHTS ACT.

In an action for sex discrimination by a woman pursuant to the Civil Rights Act because of sexual harassment, the offensiveness of the claimed conduct should be viewed from the perspective of a "reasonable woman" rather than from that of a "reasonable person," i.e., the severity or pervasiveness of the claimed conduct should be viewed from the perspective of the actual victim rather than a hypothetical gender-neutral person (MCL 37.2103[h]; MSA 3.548[103][h]).

2. CIVIL RIGHTS — SEX DISCRIMINATION — SEXUAL HARASSMENT — HOSTILE ENVIRONMENTAL WORKPLACE — SINGLE INCIDENTS — CIVIL RIGHTS ACT.

A woman states an actionable claim under the Civil Rights Act of sex discrimination caused by hostile-environment sexual harassment where she alleges conduct of a sexual nature that a reasonable woman would consider to be sufficiently severe or pervasive to alter the conditions of employment by substantially interfering with her employment or by creating an intimidating, hostile, or offensive employment environment; the required showing of the severity of the harassing conduct will vary inversely with the pervasiveness of the conduct; under some circumstances, a single incident may be sufficient to establish a claim of sex discrimination caused by hostile-environment sexual harassment (MCL 37.2103[h]; MSA 3.548[103][h]).

*Menmuir, Zimmerman, Kuhn & Bearup* (by *Mark D. Williams*), for the plaintiff.

*Cunningham, Davison, Beeby, Rogers & Alward* (by *William M. Davison*), for the defendants.

Before: NEFF, P.J., and MAHER and HOOD, JJ.

HOOD, J. Plaintiff appeals as of right from a circuit court order granting summary disposition in favor of defendants. Plaintiff's complaint alleged sexual harassment in violation of the Michigan Civil Rights Act[1] (count I), constructive discharge (count II), and assault and battery (count III).[2] Counts I and II were dismissed by the trial court pursuant to MCR 2.116(C)(10), and count III was dismissed pursuant to MCR 2.116(C)(8). We reverse.

Plaintiff began working for defendant Clarke-Everett Dog and Cat Hospital, P.C., as an unregistered veterinary technician in January 1984. Her employment required her to work occasional weekends and holidays with one of the two veterinarians. Because of her personal schedule, plaintiff often worked those days with defendant Everett. That was the case on May 29, 1988.

That Sunday proved to be busy at the hospital; however, plaintiff and Everett managed to take a break late in the day. While plaintiff was relaxing on the couch in the employee lounge, Everett sat down next to her and placed his arm around her neck. When plaintiff tried to get up, Everett restrained her. After three attempts, plaintiff finally freed herself and sat forward on the couch. Everett proceeded to flatter plaintiff as he moved closer to her. Everett began caressing plaintiff's back and arms, even after she had indicated her displeasure and unease with his advances. According to plaintiff, Everett continued to caress her back, while moving his hand toward her breasts. He then placed his hand behind her neck and brought his face toward plaintiff's face in an attempt to kiss

---

[1] MCL 37.2101 et seq.; MSA 38.548(101) et seq.

[2] Plaintiff's fourth count, which alleged a violation of the Employee Right to Know Act, MCL 423.501 et seq.; MSA 17.16(1) et seq., was dismissed with prejudice by stipulation of the parties and is not a subject of this appeal.

her.[3] Plaintiff was able to push Everett's face away, went across the room, and accused him of wanting to play a "nasty game." Rattled by the incident, plaintiff requested that they go outside. She did so because they would then be in public.

Although plaintiff stayed to finish her shift, she felt compelled to terminate her employment the next day, particularly because she was scheduled to work again with Everett. Plaintiff alleged that when she notified Dr. Clarke of Everett's conduct, he took no remedial measures and told her that women like her had to watch themselves around men because of their cute, bubbly personalities.

In addition to ending her employment, plaintiff immediately sought counseling for the adverse effect the incident had on her psychological well-being. In December 1988, plaintiff instituted this action, alleging that she was the victim of unlawful sexual harassment and assault and battery and that, because of the hostile work environment created by Everett's sexual advances, her termination of employment constituted a constructive discharge.

Defendants moved for summary disposition, claiming that a single incident is not sufficient to state a cause of action for sexual harassment resulting from a hostile work environment. Accordingly, defendants argued for dismissal of count II, because the constructive discharge claim was predicated on a deficient sexual harassment claim. Lastly, defendants moved for dismissal of count III, alleging that the Workers' Disability Compensation Act (WDCA) barred plaintiff's assault and battery claim.

In granting defendants' motion, the trial court determined that even accepting as true all of

---

[3] Defendant Everett admitted that he did attempt to kiss plaintiff.

plaintiff's allegations, her claim of sexual harassment and constructive discharge must fail. Relying on *Langlois v McDonald's Restaurants of Michigan, Inc,* 149 Mich App 309; 385 NW2d 778 (1986), the trial court determined that a single act does not state a claim of hostile-environment sexual harassment.[4] In addition, the court agreed with defendants that the WDCA barred plaintiff's assault and battery claim.

I

Plaintiff alleged that defendants violated § 202 of the Michigan Civil Rights Act[5] by discriminat-

---

[4] In *Langlois,* the plaintiff based her claim of hostile-work-environment sexual harassment on a single incident that occurred while she worked at one of the defendant's fast-food restaurants. The plaintiff was instructed by "first assistant" Ivan Forney to take a break, and he whispered to her, "Hi, baby, let's have some fun." Once on break, Forney again asked her if she wanted to "have some fun," and moved his hips back and forth in a crude manner. He then placed his hand on her breast and grabbed her buttocks. The plaintiff then left the crewroom. *Id.* at 311.

The plaintiff rejected her manager's suggestions to "just let it go," and left the restaurant. An investigation by the defendant led to Forney's discharge the next week. *Id.* The plaintiff continued to work at the restaurant for more than eight months, when she was discharged for taking cookies without permission. *Id.* at 312. The plaintiff then instituted an action for sexual harassment because of the creation of a hostile work environment. This Court affirmed the grant of summary disposition to the defendant on the basis of the plaintiff's allegation of only a single incident. Relying on *Seep v Commercial Motor Freight, Inc,* 575 F Supp 1097 (SD Ohio, 1983), *Ferguson v E I du Pont de Nemours & Co, Inc,* 560 F Supp 1172 (D Del, 1983), and *Scott v Sears, Roebuck & Co,* 605 F Supp 1047 (ND Ill, 1985), this Court determined that the single incident complained of was not sufficiently severe and pervasive to permit recovery under the Civil Rights Act. *Id.* at 314-316.

[5] MCL 37.2202; MSA 3.548(202) provides:

(1) An employer shall not:
(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

ing against her on the basis of sex. The state Civil Rights Act defines this type of discrimination in § 103(h), MCL 37.2103(h); MSA 3.548(103)(h), which provides:

> Discrimination because of sex includes sexual harassment which means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature when:
> (i) Submission to such conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .
> (ii) Submission to or rejection of such conduct or communication by an individual is used as a factor in decisions affecting such individual's employment . . . .
> (iii) Such conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment.

In her complaint, plaintiff alleges that Everett's conduct substantially interfered with her employment and created a hostile work environment; therefore, we focus our analysis on the sufficiency of her claim under § 103(h)(iii).

Michigan courts have frequently reviewed sexual harassment claims under the state Civil Rights Act with reference to the persuasive federal precedent developed under the analogous federal legis-

(b) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including a benefit plan or system.

lation, title VII of the Civil Rights Act of 1964.[6] When examining claims of hostile-environment sexual harassment, the court may properly look to the guidelines promulgated by the Equal Employment Opportunity Commission. *Meritor Savings Bank, FBS v Vinson,* 477 US 57; 106 S Ct 2399; 91 L Ed 2d 49 (1986). The EEOC guidelines describe hostile-environment harassment as "conduct [which] has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 CFR 1604.11(a)(3). We note that the language of this guideline is nearly identical to that of § 103(h)(iii) of the state Civil Rights Act quoted above.

Title VII affords employees the right to work in an environment that is free from discriminatory intimidation, insult, and ridicule. *Meritor Savings Bank,* 477 US 65. However, not all harassment affects a "term, condition, or privilege" of employment within the meaning of title VII.[7] In order to maintain a claim under title VII, the sexual harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment. *Id.* at 67. See also *Henson v City of Dundee,* 682 F2d 897, 904 (CA 11, 1982).

In *Langlois, supra,* this Court determined that the single incident experienced by the plaintiff was not sufficiently severe and pervasive to constitute the substantial interference required under the state Civil Rights Act. Defendants urge us to follow *Langlois* and the cases cited therein, and

---

[6] 42 USC 2000e *et seq.*

[7] The United States Supreme Court noted, for example, that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" is not, by itself, an actionable claim under title VII. 477 US 67.

conclude that a single incident is not sufficient to state a claim of hostile-environment harassment under the state Civil Rights Act. In addition, defendants ask us to apply the "reasonable person" standard announced in *Rabidue v Osceola Refining Co,* 805 F2d 611 (CA 6, 1986), from which the totality of the circumstances should be viewed.

We do not agree with the standards or principles announced in *Rabidue* and *Langlois,* and we choose not to follow them. In *Rabidue,* the Sixth Circuit Court of Appeals declined to find that a hostile environment was created where there was a display of posters of naked and partially dressed women and where male employees customarily referred to women by derogatory sexual names, referred to the plaintiff as "fat ass," and specifically stated that "all that bitch needs is a good lay." Over a strong dissent, the majority concluded that the remarks and posters did not seriously affect plaintiff's psychological well-being. The court stated that the trier of facts was required to "adopt the perspective of a reasonable person's reaction to a similar environment under essentially like or similar circumstances." 805 F2d 620. A plaintiff could prevail only if a hypothetical reasonable person's work performance was interfered with and the conduct seriously affected the psychological well-being of the reasonable employee. *Id.* Among the circumstances to be considered by the factfinder is "the lexicon of obscenity that pervaded the environment of the workplace both before and after the plaintiff's introduction into its environs." *Id.*

However, we believe that in a sexual harassment case involving a woman, the proper perspective to view the offensive conduct from is that of the "reasonable woman," not that of the "reason-

able person."[8] Thus, the severity or pervasiveness of the conduct should be viewed from the perspective of the victim, not that of a hypothetical employee irrespective of gender. *Ellison v Brady,* 924 F2d 872, 878-879 (CA 9, 1991); *King v Bd of Regents of University of Wisconsin System,* 898 F2d 533, 537 (CA 7, 1990).[9] We believe that a standard which views harassing conduct from the "reasonable person" perspective has the tendency to be male-biased and runs the risk of reinforcing the prevailing level of discrimination which the state Civil Rights Act and title VII were designed to eliminate. In such a case, harassers could continue to discriminate merely because such harassment was the norm at the workplace. See *Ellison, supra* at 878; Abrams, *Gender discrimination and the transformation of workplace norms,* 42 Vand L Rev 1183 (1989). We believe that the adoption of the reasonable person standard, coupled with the consideration of the level of "obscenity" that pervaded the workplace before and after plaintiff's arrival, strips the provisions of the state Civil Rights Act of their effect. In essence, the principles in *Rabidue* prevent the state Civil Rights Act from achieving its purpose of eliminating sexual harassment from the workplace and ensuring employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

Accordingly, we adopt the "reasonable woman"

[8] We note that in a case where sex discrimination is being alleged by a man, the proper perspective would be the "reasonable man" standard.

[9] We note that the Sixth Circuit has subsequently adopted the *Rabidue* dissent's argument that the conduct should be viewed from the victim's perspective. *Yates v Arco Corp,* 819 F2d 630, 637 (CA 6, 1987). *Rabidue* has also been criticized by the Sixth Circuit in *Davis v Monsanto Chemical Co,* 858 F2d 345, 350 (CA 6, 1988), cert den 490 US 1110 (1989), by the Third Circuit in *Andrews v City of Philadelphia,* 895 F2d 1469, 1485 (CA 3, 1990), and by the Ninth Circuit in *Ellison v Brady,* 924 F2d 871 (CA 9, 1991).

perspective. This standard, which ensures a gen-der-conscious review of sexual harassment, will help enable women to participate in the work force on an equal footing with men, and prevent the trivializing of the effects of sexual harassment that has previously occurred under the gender-neutral "reasonable person" standard. *Ellison, supra* at 879, 880.

By adopting a gender-conscious standard that views the harassment from the victim's perspective, it is important to analyze and understand the different perspectives of men and women. See, e.g., *Yates v Arco Corp,* 819 F2d 630, 637, n 2 (CA 6, 1987); *Lipsett v Univ of Puerto Rico,* 864 F2d 881, 898 (CA 1, 1988); Abrams, *Gender discrimination and the transformation of workplace norms,* 42 Vand L Rev 1183 (1989). For example, because of their historical vulnerability in the work force, women are more likely to regard a verbal or physical sexual encounter as a coercive and degrading reminder that the woman involved is viewed more as an object of sexual desire than as a credible coworker deserving of respect. Such treatment can prevent women from feeling, and others from perceiving them, as equal in the workplace.

We hold, therefore, that a female plaintiff states an actionable claim for sex discrimination caused by hostile-environment sexual harassment under the state Civil Rights Act where she alleges conduct of a sexual nature that a reasonable woman would consider to be sufficiently severe or pervasive to alter the conditions of employment by substantially interfering with her employment or by creating an intimidating, hostile, or offensive employment environment.[10] Under this standard,

---

[10] We recognize that conduct considered harmless by today's society

the required showing of the severity of the harassing conduct will vary inversely with the pervasiveness of the conduct under the totality of the circumstances. *Ellison, supra* at 878; *King, supra* at 537. Accordingly, we hold that a single incident could be sufficiently severe under some circumstances to support a finding that a reasonable woman's employment was substantially interfered with or that an intimidating, hostile, or offensive employment environment had been created. We believe that in some situations the mere presence of the harasser who has engaged in particularly offensive conduct can create a hostile work environment. We therefore reject the conclusions in *Langlois* that a single incident is insufficient, as a matter of law, to state a claim for hostile-environment sexual harassment.

We must now turn to the specific case at hand and determine whether plaintiff's complaint was properly dismissed. We are presented with a situation in which plaintiff, a married woman, often worked alone with defendant Everett, who is also married, in a small veterinarian hospital in a relatively small community. The acts complained of included repeated physical contact and restraint, verbal remarks of a sexual nature, and an admitted attempt for a romantic kiss. Further, when she informed Dr. Clarke of the incident, no remedial measures were taken, and plaintiff was "warned" that women like her had to be careful around men because of their cute, bubbly personalities. Under the totality of the circumstances, we cannot say as a matter of law that plaintiff's reaction was idiosyncratic or hypersensitive, par-

may be considered discriminatory in the future. *Ellison, supra* at 879, n 12; *Rogers v EEOC,* 454 F2d 234, 238 (CA 5, 1971), cert den 406 US 957 (1972). However, the reasonable "victim" perspective standard adopted is not static, it will change as the views of the reasonable "victim" change.

ticularly where she was scheduled to work with Everett the very next day.

Consequently, we reverse the trial court's grant of summary disposition to defendants on count I of plaintiff's complaint. Accordingly, count II of plaintiff's complaint, which alleged constructive discharge arising from the creation of a hostile work environment and from Dr. Clarke's comment and failure to take remedial measures, was likewise improperly granted and is reversed. See *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 796; 369 NW2d 223 (1985).

II

Plaintiff's complaint also alleged assault and battery. The trial court dismissed this claim, finding that it was barred by the Workers' Disability Compensation Act. On appeal, plaintiff argues that the dismissal was improper where the court did not provide her an opportunity to amend her complaint as provided in MCR 2.116(I)(5) to allege that defendant intended her injuries.

We find that summary disposition was improperly granted as a result of the trial court's erroneous application of the exclusive remedy provision of the WDCA, MCL 418.131; MSA 17.237(131). The WDCA applies to bar claims brought by employees against their employers for injuries sustained in the course of work, unless such claims fall within the intentional tort exception to the exclusive remedy provision of the act. However, we have reviewed plaintiff's complaint and note that the claim of assault and battery was brought against defendant Everett individually, and not against plaintiff's employer, defendant Clarke-Everett Dog and Cat Hospital. Plaintiff is not suing her employer for the assault and battery, but rather the

perpetrator, defendant Everett.[11] The WDCA therefore is inapplicable to this claim and does not operate to bar plaintiff's recovery. Accordingly, we reverse the grant of summary disposition of this claim.

Reversed and remanded for proceedings consistent with this opinion.

---

[11] Accordingly, plaintiff's recovery, if any, would only be against defendant Everett; defendant Clarke-Everett Dog and Cat Hospital would not be vicariously liable. However, if plaintiff intended to hold her employer liable for the assault and battery, we believe that plaintiff should be afforded an opportunity to amend her complaint to allege that Everett intended her injuries. Under the facts of this case, we do not believe such an amendment would be futile where it is alleged that Everett continued his advances despite plaintiff's overt objections.