595 A.2d 1067

**FEDERATED DEPARTMENT STORES INC. t/a Bloomingdale's**

v.

**Thach LE.**

**No. 129, Sept. Term, 1989.**

Court of Appeals of Maryland.

Sept. 13, 1991.

72

Thomas B. Morrison (Francis X. Quinn, John A. Rego, Anderson & Quinn, on brief), Rockville, for petitioner.

Gary Howard Simpson (Simpson & Ehrlich, P.A., on brief), Bethesda, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE,* RODOWSKY, McAULIFFE, ADKINS ** and CHASANOW, JJ.

ELDRIDGE, Judge.

This case involves an employee's statutory right to bring a common law action against his employer under § 44 of the Maryland Workmen's Compensation Act, Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Article 101, § 44.[1]

In the trial court, the action against the employer was concluded by the court's granting the employer's motion for summary judgment. The facts on which the motion was based are those alleged in the complaint and those contained in several depositions. They disclose the following. At the time the events which gave rise to this action occurred, the plaintiff, Thach Le, was employed as a sales person by the defendant, Federated Department Stores, Inc., doing business as Bloomingdale's. He worked at a Federated store in Montgomery County, Maryland. On the morning of April 11, 1983, Mr. Le arrived for work and left his briefcase, containing "tax papers," in the store's stockroom on top of a box. According to Mr. Le, Federated provided him "with no locker or any type of secure area where he could place his personal property while at work

---

* Cole, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. Section 44 provides as follows:

   "**§ 44. Option to take benefits under article or sue where injury or death results from deliberate intention of employer.**

   "If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child, children or dependents of the employee shall have the privilege either to take under this article or have cause of action against such employer, as if this article had not been passed."

with a reasonable expectation that such personal property would be secure from interference by other employees." That same day, after returning from lunch, he was told by Clarence Rich, a Federated detective, to accompany Mr. Rich to the security office and bring his briefcase. Suzanne Spahr, the Regional Director of Security for Federated, was waiting in the security office when Mr. Le arrived with Mr. Rich.

According to Mr. Le, Mrs. Spahr falsely told him that someone saw him steal a calculator and conceal it in his briefcase. When Mr. Le protested, Mrs. Spahr told Mr. Le that, if he did not sign a statement confessing to the theft, Federated would prosecute, and he would have to spend substantial time in jail. Mr. Le claimed that he was not allowed to leave the security office or to make a telephone call unless he signed a statement. Mr. Rich, who was physically larger than Mr. Le, blocked the exit to the security area during Mr. Le's detention. Mr. Le eventually signed a statement confessing to the theft of the calculator, although he claimed that he did not read the statement. He was then led crying out of the store through the part of the store where he had worked.

As a result of the incident, Mr. Le's employment was terminated by Federated. A few days after the incident, Mr. Le told Federated's personnel office that he did not steal the calculator, and he applied for reinstatement. Federated, however, denied his application for reinstatement.

Mr. Le further alleged that in

"an effort to ascertain who placed the calculator in his case, Mr. Le went back and talked to employees. He learned from Lynn Gunther, another sales person, that Mrs. Spahr had gotten a calculator. Mrs. Spahr told Lynn she would probably buy it, and she would bring it back to Lynn if she didn't like it. He learned from Janet Dolan that Clarence [Rich] and Mrs. Spahr went in the stockroom and she heard some noise back there. From his investigation, Le concluded that the security people had put the calculator in his briefcase."

Mr. Le subsequently instituted the present action by filing a complaint against Mrs. Spahr and Federated in the Circuit Court for Montgomery County. His complaint, as amended, contained counts charging false arrest, intentional infliction of emotional distress, and defamation. According to the complaint, the injuries resulting from the incident included Mr. Le's inability to secure employment "in his chosen field" and his inability to obtain other employment except as a "bus boy" at a much lower hourly wage rate. Mr. Le also asserted that the incident "has changed his whole way of dealing with people," that he finds it difficult to trust people, that he "is now afraid to lay anything down that someone could put something into," and that he could not "sleep for weeks after his discharge."

After considerable discovery, and after the setting and postponement of numerous trial dates, Federated filed a motion for summary judgment, asserting that Mr. Le's action against Federated was barred by the exclusivity provision of the Workmen's Compensation Act, Code (1957, 1985 Repl.Vol., 1990 Cum.Supp.), Article 101, § 15, which states that the employer's liability for payment of workers' compensation provided for in the statute shall be the exclusive remedy.[2] Federated, in its motion and accompanying

---

2. Article 101, § 15 states as follows:
   "**Duties of employers; injuries not included, etc.**
   "Every employer subject to the provisions of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by willful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job except when such drug has been administered or taken in accordance with a physician's prescription. Where the injury is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or

memorandum, did not assert that Mr. Le had sustained "an accidental personal injury" and did not explain why § 15 was involved. Instead, Federated simply made the bald assertion that § 15 was applicable.

The focus of Federated's argument for summary judgment was upon § 44 of the Workmen's Compensation Act, which preserves an employee's right to file a common law action against his employer if the employee's injury resulted "from the deliberate intention of his employer to produce such injury...." Relying on two Court of Special Appeals' opinions, *Continental Casualty Co. v. Mirabile*, 52 Md. App. 387, 449 A.2d 1176 (1982), and *Schatz v. York Steak House*, 51 Md.App. 494, 444 A.2d 1045 (1982), Federated argued that Mr. Le could opt to sue the employer at common law, as allowed under § 44, only if Mrs. Spahr was the "alter ego" of Federated or if she acted with its express authorization when she committed the acts on which Mr. Le's suit was based. Federated went on to argue that Mrs. Spahr was not the alter ego of Federated and that her alleged acts had not been expressly authorized. Federated insisted that "[t]he facts of the case at hand are substantially the same as those in *Continental v. Mirabile.*"

---

another, or where the injury results solely from the intoxication of the injured employee while on duty or solely from the effect upon him of any narcotic, depressant, stimulant, hallucinogenic or hypnotic drug or from the effect upon him of any other drug which renders him incapable of satisfactorily performing his job, neither the injured employee nor any dependent of such employee shall receive compensation under this article.

"The liability prescribed by the last preceding paragraph shall be exclusive, except that if an employer fails to secure the payment of compensation for his injured employees and their dependents as provided in this article, and injured employee or his legal representative in case death results from the injury, may, at his option, elect to claim compensation under this article, or to maintain an action in the courts for damages on account of such injury; and in such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee...."

The plaintiff Le, in his opposition to Federated's motion for summary judgment, also did not discuss whether Art. 101, § 15, encompassed his claim. Instead, the thrust of the plaintiff's argument was to distinguish *Continental Casualty Co. v. Mirabile, supra,* and *Schatz v. York Steak House, supra.* The plaintiff argued that Mrs. Spahr was in a different position than the employees involved in *Mirabile* and *Schatz,* as "Spahr was the Regional Director for security for [Federated] in the Washington area, and worked at both the Tyson's and White Flint Stores.... She was the final authority for security policies of defendant [Federated] in the Washington area." The plaintiff also pointed out that, in *Mirabile* and *Schatz,* the exclusivity bar of the Workmen's Compensation Act, and the construction of the § 44 exception to exclusivity adopted in those cases, were applied only to the assault and battery counts and not to other intentional torts. The plaintiff further argued that the refusal to reinstate Mr. Le constituted ratification of Mrs. Spahr's acts.

The circuit court granted Federated's motion for summary judgment, stating: "The Plaintiff seeks to distinguish this case from *Continental Casualty Company [v. Mirabile].* He didn't. I can't. For that reason I will grant the motion for summary judgment on behalf of the Federated Department Stores, trading as Bloomingdale's." The circuit judge did not discuss the applicability of Art. 101, § 15, to the plaintiff's claim; in fact, the judge made no mention of § 15.

When the circuit court refused the plaintiff's request to finalize the judgment pursuant to Maryland Rule 2–602(b), the plaintiff voluntarily dismissed his action against Mrs. Spahr, making the judgment in favor of Federated final. The plaintiff then appealed to the Court of Special Appeals.

The Court of Special Appeals reversed, holding that because "[t]here was no claim for any physical injuries" to Mr. Le, his claim was not compensable under the Workmen's Compensation Act and that, therefore, it did not fall within the exclusivity provision of § 15. *Le v. Federated*

*Department Stores,* 80 Md.App. 89, 90, 560 A.2d 42 (1989). The intermediate appellate court, relying upon cases in some other states, took the position that "non-physical injury torts are [not] within the ambit of the [Workmen's Compensation] Act" and that "tort actions are not barred by Workers' Compensation Acts when the essence of the injury is non-physical." *Le v. Federated Department Stores, supra,* 80 Md.App. at 92, 560 A.2d at 43. The court distinguished its earlier decisions in *Continental Casualty Co. v. Mirabile, supra,* 52 Md.App. 387, 449 A.2d 1176, and *Schatz v. York Steak House, supra,* 51 Md.App. 494, 444 A.2d 1045, on the ground that "*Schatz* and *Mirabile* involved physical and psychological injuries for which compensation is provided under the Act." *Le v. Federated Department Stores, supra,* 80 Md.App. at 90–91, 560 A.2d at 42. The Court of Special Appeals concluded (80 Md.App. at 93, 560 A.2d at 44):

> "The quiddity of false arrest, defamation, and intentional infliction of emotional distress is non-physical. Those torts are ordinarily outside the scope of the Workers' Compensation Act. Since they are not within the Act, the statute does not protect the employer from actions grounded on those particular torts."

Federated filed in this Court a petition for a writ of certiorari, contending that "[t]he facts of the present case are indistinguishable from those in *Mirabile*" and that "there appear to be only two alternatives for this Court; either overrule *Mirabile* or reverse the Court of Special Appeals' decision in the present case." (Petition For a Writ of Certiorari, pp. 7–8). Federated maintained that *Mirabile* involved intentional torts committed by employees whose positions were similar to that of Mrs. Spahr in the present case. Federated also insisted "that both Mirabile and Le, if believed, sustained exactly the same injuries, namely continuing emotional or psychological trauma." (*Id.* at pp. 10–11). Federated argued that the injuries in this case were compensable under the Workmen's Compensation Act, that the *Mirabile* and *Schatz* cases were correctly decided, and

that § 44 of the statute did not give Mr. Le the option of filing a common law tort action against the employer Federated because Mrs. Spahr was not the "alter ego" of the employer corporation and the corporation had not expressly authorized her intentional tortious acts.

We granted the petition and shall affirm the judgment of the Court of Special Appeals. We do so, however, on different grounds than those relied upon by the intermediate appellate court.

As previously discussed, neither the parties nor the trial judge dealt with the the applicability or scope of Art. 101, § 15, in connection with the motion for summary judgment and the ruling thereon. The only issue addressed in the circuit court was whether those parts of the opinions in *Continental Casualty Co. v. Mirabile, supra,* and *Schatz v. York Steak House, supra,* relating to the right to sue under Art. 101, § 44, required summary judgment in favor of Federated.

Ordinarily, an appellate court should review a grant of summary judgment only on the grounds relied upon by the trial court. *Boyer v. State,* 323 Md. 558, 588, 594 A.2d 121, 136 (1991); *Orkin v. Holy Cross Hospital,* 318 Md. 429, 435, 569 A.2d 207, 210 (1990); *Three Garden v. USF & G,* 318 Md. 98, 107–108, 567 A.2d 85, 89 (1989); *Geisz v. Greater Baltimore Medical,* 313 Md. 301, 314 n. 5, 545 A.2d 658, 664 n. 5 (1988). It may be that, analytically, the applicability of § 15 to the plaintiff's claim was implicitly decided by the trial court, as § 44 and its construction in *Mirabile* and *Schatz* only become relevant if the claim is encompassed by § 15. Section 44 grants to the employee the *option,* under certain circumstances, to take compensation under § 15 or to file a lawsuit against the employer; therefore, § 44 applies only to claims covered by § 15. Nevertheless, because of the failure of the parties and the trial court to address specifically the applicability of § 15 to the plaintiff's claim, and because we need not decide in this

case whether § 15 encompassed the plaintiff's claim, we shall not reach the issue.

It is unnecessary for us to decide whether Mr. Le's claim was or was not covered under § 15 of the Workmen's Compensation Act for the following reasons. If Mr. Le's claim was not covered under § 15 of the Workmen's Compensation Act, the exclusivity provision in § 15 of the Act would have no application and the common law tort action could be maintained. If Mr. Le's claim was covered by § 15, we believe that, under the particular circumstances of this case, § 44 grants Mr. Le the option of bringing this common law action against his employer for damages resulting from the intentional torts of false arrest, intentional infliction of emotional distress, and defamation. In our view, the construction of § 44 by the Court of Special Appeals in *Continental Casualty Co. v. Mirabile, supra,* 52 Md.App. 387, 449 A.2d 1176, and *Schatz v. York Steak House, supra,* 51 Md.App. 494, 444 A.2d 1045, was too narrow.

Section 44 states as follows:

"**§ 44. Option to take benefits under article or sue where injury or death results from deliberate intention of employer.**

"If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child, children or dependents of the employee shall have the privilege either to take under this article or have cause of action against such employer, as if this article had not been passed."

Long ago this Court set forth the principles governing the interpretation of Maryland Workmen's Compensation Act (*Frazier v. Leas,* 127 Md. 572, 575, 96 A. 764, 765 (1916)):

"*First* the intention of the Legislature as expressed in the words of the Act must be ascertained and given effect; *secondly,* 'the language of a statute is its most natural expositor, and where the language is susceptible of a

sensible interpretation, it is not to be controlled by any extraneous considerations' (*Alexander v. Worthington,* 5 Md. 471); *thirdly,* the construction must be liberal in favor of private right, and construction which imputes an intention to deny valuable rights should be avoided; *fourthly,* statutes are presumed to be passed in full recognition of the constitutional rights of the citizen." *See* 53 E. Singleton, *Workmen's Compensation in Maryland* 76, (Johns Hopkins University Historical Studies 1935).

▮ In light of these principles, § 44 would seem to cover this case. The language grants the employee the option of maintaining a "cause of action against [an] employer" for an injury resulting "from the deliberate intention of his employer to produce such injury." Mr. Le's allegations appear to be sufficient to assert an injury resulting from the deliberate intention of Mrs. Spahr to produce the injury. While Mrs. Spahr was not the "employer," § 44 goes on to provide that the employee's cause of action against his employer is "as if this article had not been passed." Absent any bar to suit in Article 101, under Maryland common law an employer ordinarily can be sued for intentional tortious acts committed by one of his employees acting within the scope of employment. *Cox v. Prince George's County,* 296 Md. 162, 170–171, 460 A.2d 1038, 1042–1043 (1983); *Drug Fair v. Smith,* 263 Md. 341, 343–351, 283 A.2d 392, 394–398 (1971); *Lewis v. Accelerated Express,* 219 Md. 252, 148 A.2d 783 (1959). *See Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991); *Ennis v. Crenca,* 322 Md. 285, 587 A.2d 485 (1991).

As previously mentioned, the Court of Special Appeals in *Continental Casualty Company v. Mirabile, supra,* 52 Md.App. 387, 449 A.2d 1176, and *Schatz v. York Steak House, supra,* 51 Md.App. 494, 444 A.2d 1045, took the position that, for an employee to be able to maintain a § 44 action against his employer, "absent express authorization by the employer, the [employer's] agent [committing the intentional tort] must be the 'alter ego' of the employer in order for his intentional misconduct to be attributed to the

employer." *Schatz v. York Steak House, supra,* 51 Md. App. at 496–497, 444 A.2d at 1047. The Court of Special Appeals in *Mirabile,* 52 Md.App. at 396–397, 449 A.2d at 1182–1183, also indicated its view that it is unfair and "there is no justification in holding the employer liable for an employee's intentional acts" where "it is neither the employer personally nor someone acting as the alter ego of the employer who commits the intentional tort...."

The tort suit in the *Schatz* case was an assault and battery action based upon a rape. In *Mirabile,* the employee's suit against the employer contained counts asserting assault and battery, defamation, and intentional infliction of emotional distress. The employee did suffer physical injury resulting from the assault and battery. The Court of Special Appeals' holding in *Mirabile,* that the tort action was barred by the exclusivity provision in Art. 101, § 15, and that the exception in Art. 101, § 44, was inapplicable, related solely to the assault and battery count. The intermediate appellate court's rulings on the other counts were unrelated to the Workmen's Compensation Act. Consequently, the assertion by Federated and the circuit court that the present case is indistinguishable from *Mirabile* is not entirely accurate. Nonetheless, as earlier stated, we believe that the Court of Special Appeals' construction of § 44 in *Schatz* and *Mirabile* is too narrow.

The Court of Special Appeals in *Schatz* and *Mirabile* relied on cases from Illinois, Utah, Alaska, and Montana, and on a federal case applying Georgia law. Not one of the jurisdictions cited by the Court of Special Appeals, however, has a provision in its workers' compensation statute similar to § 44 of Maryland's Workmen's Compensation Act granting employees the option of suing their employers for injuries resulting from a deliberate intent to injure. In many jurisdictions where there are no statutory provisions like § 44, the courts have created a limited exception to coverage provisions like our § 15, which provides for workers' compensation and makes the workers' compensation remedy exclusive. This judicially created exception allows a

worker to sue his employer if the employer himself or the employer's "alter ego" intentionally injures the worker or if the employer expressly authorized the intentional injury. *See e.g., Bryan v. Utah International*, 533 P.2d 892, 894–895 (Utah 1975). *See also* 2A Larson, *The Law of Workmen's Compensation* § 68.10 through § 68.36 (1990). Different reasons have been advanced to support the exception, such as the injury was not "accidental," an injury resulting from the deliberate intention of the employer "does not arise out of the employment," or reasons of public policy. *See* 2A, Larson, *The Law of Workmen's Compensation, supra,* § 68.11.

This judicially created exception is limited to situations where the employer himself or the employer's "alter ego" commits the intentional tort, or the employer expressly authorizes the intentional tort. The exception, and the "alter ego" limitation to the exception, represent interpretations of provisions comparable to Maryland's § 15. Consequently, construing § 44 as embodying the same exception, and the same "alter ego" limitation to the exception, renders § 44 superfluous. If we were to follow the authorities relied on by the Court of Special Appeals, the exception and "alter ego" limitation would exist absent § 44.

There is another problem with construing § 44 as simply embodying the judicially-created exception to coverage provisions like our § 15. As indicated above, there are several rationales for the exception. Professor Larson states that "[t]he best [legal theory supporting the exception] is that the employer will not be heard to allege that the injury was 'accidental' . . . when he himself intentionally committed the act." Larson, *supra,* § 68.11, at 13–4. This rationale, as well as some of the other theories given, would indicate that an injury resulting from the deliberate intent to injure by the employer himself, or the employer's "alter ego," is not within a basic coverage provision like § 15. Section 44, however, is only applicable to injuries encompassed by § 15. Section 44 gives an employee the *option* of taking workers' compensation benefits under the statute or of suing as if

the statute had not been passed. In light of this, it makes little sense to equate § 44 with a judicially-created exception to compensation coverage.

There are only a handful of jurisdictions that have adopted provisions similar to § 44 in their workers' compensation statutes. *See, e.g.,* Ky.Rev.Stat. (1972, 1983 Repl. Vol., 1990 Cum.Supp.), § 342.610; La.Rev.Stat. (1985, 1991 Cum.Supp.), § 23:1032; Mich.Comp.Laws (1985, 1991 Cum. Supp.), § 418.131; N.H.Rev.Stat. (1987, 1990 Cum.Supp.), § 281–A:8; N.J.Stat. (1988, 1991 Cum.Supp.), § 34:15–8; Or. Rev.Stat. (1989, 1990 Cum.Supp.), § 656.156; S.D. Codified Laws (1978, 1991 Cum.Supp.), § 62–3–2; Wash.Rev.Code (1989, 1990 Cum.Supp.), § 51.24.020; W.Va.Code (1966, 1985 Repl.Vol., 1991 Cum.Supp.), § 23–4–2. A majority of the decisions in the states which have adopted a provision similar to Maryland's § 44 seem to reject imposing a requirement that the employer himself or the employer's "alter ego" commit the intentional tort in order for the employee to sue the employer. *See, e.g., Jones v. Thomas,* 426 So.2d 609, 612 (La.1983); *Radtke v. Everett,* 189 Mich. App. 346 n. 11, 471 N.W.2d 660, 665 n. 11 (1991); *Millison, v. E.I. du Pont de Nemours & Co.,* 101 N.J. 161, 184–186, 501 A.2d 505, 517–518 (1985); *Hardy v. State,* 38 Wash. App. 399, 685 P.2d 610 (1984).[3]

In some other jurisdictions having statutes authorizing intentional tort suits against the employer, where the legislatures intended to restrict the right to sue to intentional torts committed by the employer *personally* or by the employer's "alter ego," specific language was included in the statutory provisions reflecting this intent.[4] Presum-

---

**3.** Apparently only two of the nine jurisdictions having a provision in their workers' compensation statute similar to § 44 impose a requirement that the tort be committed by the employer himself or the employer's alter ego. *See Kiser v. Neumann Company Contractors, Inc.,* 426 S.W.2d 935 (Ky.App.1967); *Bakker v. Baza'r, Inc.,* 275 Or. 245, 551 P.2d 1269 (1976).

**4.** *See, e.g.,* Ariz.Rev.Stat. (1956, 1983 Repl.Vol., 1990 Cum.Supp.), § 23–1022.A ("the right to recover compensation pursuant to this

ably, if the General Assembly of Maryland had intended this particular limitation, it would have said so.

This Court has previously declined to insert language into § 44 to change the scope of an employee's right to sue his employer as provided for in that section. In *Johnson v. Mountaire Farms*, 305 Md. 246, 503 A.2d 708 (1986), we rejected an attempt by the plaintiff to include "gross, wanton, wilful or reckless negligence" within the meaning of the term "deliberate intention" used in § 44. The Court stated that the General Assembly intended the language of § 44 to "have its commonly understood meaning" and that the employer's grossly negligent conduct in failing to provide a safe place to work, in violation of government regulations, did "not constitute an intentional tort," 305 Md. at 255, 503 A.2d at 712. Just as we refused in the *Johnson* case to expand the coverage of § 44 beyond the plain statutory language, we should not in the present case restrict the coverage of § 44 by inserting specific conditions not set forth by the Legislature.

When an employee suffers an injury resulting from a deliberate intent to injure him, § 44 authorizes a suit against the employer "as if this article [Art. 101] had not been passed." Absent the bar of Art. 101, in order for an

chapter for injuries sustained by an employee ... is the exclusive remedy ... except that if the injury is caused by the employer's wilful misconduct ... *and the act causing the injury is the personal act of the employer, ... or if the employer is a partnership, on the part of a partner, or if a corporation, on the part of an elective officer of the corporation* ... the injured employee may either claim compensation or maintain an action at law for damages....") (Emphasis added); Idaho Code (1949, 1989 Repl.Vol., 1991 Cum.Supp.), § 72–209 ("the liability of the employer under this law shall be exclusive * * * The exemption from liability given an employer by this section shall also extend to the employer's surety and to all officers, agents, servants and employees of the employer or surety, provided that such exemptions from liability shall not apply in any case where the injury or death is proximately caused by the wilful or unprovoked physical aggression of the employer, its officers, agents, servants or employees, *the loss of such exemption applying only to the aggressor and shall not be imputable to the employer unless provoked or authorized by the employer, or the employer was a party thereto.*") (Emphasis added).

employer to be held liable for the intentional torts of an employee committed within the scope of employment, the employee need not be the "alter ego" of the employer. The employee's acts need not be "expressly authorized." *Sawyer v. Humphries, supra,* 322 Md. at 254–255, 587 A.2d at 470; *Ennis v. Crenca, supra,* 322 Md. at 293, 587 A.2d at 489; *Hopkins C. Co. v. Read Drug & C. Co.,* 124 Md. 210, 214, 92 A. 478, 479–480 (1914).

Furthermore, although this Court has not explicitly discussed the issue presented in this case, our decisions support an employee's right under Art. 101, § 44, to sue his or her employer for some intentional torts based on the employer's vicarious liability for the conduct of a co-employee. *See, e.g., Young v. Hartford Accident & Indemnity,* 303 Md. 182, 196–201, 492 A.2d 1270, 1277–1279 (1985); *General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16 (1977); *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977); *Montgomery Ward & Company, Inc. v. Keulemans,* 275 Md. 441, 340 A.2d 705 (1975). *See also Gallagher v. Bituminous Fire & Mar. Ins.,* 303 Md. 201, 208–210, 492 A.2d 1280, 1283–1284 (1985) (relates to the scope of § 15).

■ We do not mean to imply, however, that an employer's tort liability to an employee under § 44 is as broad as the employer's liability to third parties for intentional torts. Although not embodying the particular restriction upheld by the Court of Special Appeals in *Mirabile* and *Schatz,* § 44 is obviously a limited statute. As previously discussed, it only covers situations encompassed by § 15. Moreover, the language "deliberate intention . . . to produce such injury" in § 44 clearly does not embrace all tort actions which are categorized as "intentional torts." Finally, it may well be that the General Assembly, by the language "the deliberate intention of *his employer* to produce such injury," intended something less than the full sweep of common law respondeat superior liability. Some jurisdictions with statutes similar to § 44, while not adopting the "alter ego" concept of *Schatz* and *Mirabile,* have appeared to limit the class of employee-tortfeasors for

whose intentional torts the employer is vicariously liable under the statute. *See, e.g., Hardy v. State, supra,* 685 P.2d at 611.

Except for the "alter ego" theory of *Schatz* and *Mirabile,* none of the above-mentioned issues relating to the scope of § 44 were briefed and argued by the parties or have ever been raised in this case. Consequently, this would be an inappropriate case for exploring the reach of § 44. We hold only that, under the facts of this case, the circuit court should not have granted Federated's motion for summary judgment based on the *Mirabile* opinion. The facts alleged by the plaintiff would appear to be sufficient to show a deliberate intention to injure the plaintiff on the part of Mrs. Spahr. Whatever might be the scope of an employer's § 44 respondeat superior liability in other contexts, we believe that an employer can be held liable under § 44, with regard to the matter alleged in this case, for the intentional tortious acts of the employer's Regional Director of Security.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.

CHASANOW, J., concurs in the result only.