503 A.2d 708

Nancy JOHNSON, Ind., and as Pers. Rep. of the Estate of
Rodney Lloyd Adams, Jr.

v.

MOUNTAIRE FARMS OF DELMARVA, INC. et al.

No. 105, Sept. Term, 1984.

Court of Appeals of Maryland.

Jan. 30, 1986.

Donn Weinberg (Thomas E. Grzech and Fine, Gibbons & MacMeekin, P.A., on the brief), Baltimore, for appellant.

Steven R. Migdal (Manis, Wilkinson, Snider & Goldsborough, Chartered, on the brief), Annapolis, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), specially assigned.

COLE, Judge.

In this case, we shall decide whether the Workmen's Compensation Act (the Act) permits an employee to sue his

employer for a deliberate, intentional injury where the injury is caused by the reckless, wanton or wilful misconduct of the employer resulting in unsafe working conditions.

The facts generating this question may be stated briefly. Rodney Adams, age sixteen, was employed by Mountaire Farms of Delmarva, Inc. (Mountaire) at its farm in Somerset County. On June 3, 1981, Rodney was electrocuted while using a sump pump to remove liquid chicken fat and water from a ground depression. Approximately two months before Rodney was electrocuted, the Maryland Occupational Safety and Health Administration (MOSHA) cited Mountaire for a "serious violation" under Maryland Code (1957, 1979 Repl.Vol.), Art. 89, § 40(b).[1] The serious violation arose because of several defective and dangerous parts of the sump pump's electrical connections: the sump pump cord's outer covering was broken; the insulation on the conductor was damaged and exposed the conductor itself; the cord was spliced on each end; and the plug lacked a ground prong. After the citations were issued, Mountaire informed MOSHA that the serious violation had been corrected. This was as a matter of fact untrue.

On January 17, 1983, Nancy Johnson, individually and as personal representative of the estate of her son, Rodney, filed a wrongful death and survivorship action against Mountaire in the Circuit Court for Somerset County. The suit alleged that Mountaire's conduct satisfied the requirement of Art. 101, § 44, that the injury or death resulted "from the deliberate intention of his employer to produce such injury or death...." Mountaire filed a general issue plea and a special issue plea contending that the allegations of the declaration did not satisfy the "deliberate intention to injure" requirement of § 44. The circuit court agreed with Mountaire and dismissed the case. Johnson appealed to the

---

1. A serious violation is defined in § 40(b) as one where "there is a substantial probability that death or serious physical harm could result from a condition which exists...."

Court of Special Appeals and also filed a petition for writ of certiorari with us. We granted Johnson's writ prior to consideration by the intermediate appellate court.

Legislation dealing with workmen's compensation has been a part of our law since 1914, when the General Assembly determined that the common law tort system was an inadequate and unsatisfactory means for compensating workers who were injured in the course of their employment. Prior to the enactment of the Workmen's Compensation Act, an employee's sole remedy against his employer for injuries sustained during the course of his employment was to bring a common law suit against his employer. Because these suits were subject to the employer's defense of contributory negligence, assumption of risk, and the fellow servant rule, the majority of industrial accidents remained uncompensated. *Prosser and Keeton on The Law of Torts* § 80 (W. Keeton 5th ed. 1984). Additionally, workmen and employers were forced to pay the costs of litigation and taxpayers were forced to pay part of the cost for maintaining courts to determine the question of responsibility.

To avoid these unnecessary evils,[2] the General Assembly passed the Workmen's Compensation Act to compensate

---

**2.** The preamble to Maryland's Workmen's Compensation Act, ch. 800, Acts of 1914, provides:

WHEREAS, The State of Maryland recognizes that the prosecution of various industrial enterprises which must be relied upon to create and preserve the wealth and prosperity of the State involves injury to large numbers of workmen, resulting in their partial or total incapacity or death, and that under the rules of the common law, and the provisions of the statutes now in force an unequal burden is cast upon its citizens, and that in determining the responsibility of the employer on account of injuries sustained by his workmen, great and unnecessary cost is now incurred in litigation, which cost is borne by the workmen, the employers, and the taxpayers, in part, in the maintenance of courts and juries to determine the question of responsibility under the law as it now exists; and

WHEREAS, in addition thereto, the State and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, which burden should, inso-

workers who were injured in the course of their employment. *See Victory Sparkler Co. v. Francks*, 147 Md. 368, 373, 128 A. 635, 636 (1925). In the course of enacting the Act, the General Assembly struck a delicate balance between workers and employers. Workers lost their right to sue their employers for negligence but gained the right to quick and certain compensation for injuries sustained during the course of their employment, regardless of fault. *See Wood v. Aetna Casualty & Surety Co.*, 260 Md. 651, 660–61, 273 A.2d 125, 131 (1971); *Victory Sparkler Co., supra*, 147 Md. at 376–77, 128 A. at 638. In return, employers lost their defenses of contributory negligence, assumption of risk, and fellow servant rule but gained the advantage of having their liability limited. *Wood, supra*, 260 Md. at 660–61, 273 A.2d at 131; *Victory Sparkler Co., supra*, 147 Md. at 376–77, 128 A. at 638; *see also* 2A A. Larson, *The Law of Workmen's Compensation* § 65.11 (1983).

Maryland Code (1957, 1985 Repl.Vol.), Art. 101, § 15 sets forth the duties of employers and the restrictions of their liability. It states:

Every employer subject to the provision of this article, shall pay or provide as required herein compensation according to the schedules of this article for the disability or death of his employee resulting from an accidental

---

far as may be consistent with the rights and obligations of the people of the State, be more fairly distributed as in this Act provided; and

WHEREAS, the common law system governing the remedy of · workmen against employees for injuries received in extra-hazardous work is inconsistent with modern industrial conditions; and injuries in such work, formerly occasional, have now become frequent and inevitable.

NOW, THEREFORE, The State of Maryland, exercising herein its police and sovereign power, declares that all phases of extra hazardous employments be, and they are hereby withdrawn from private controversy, and sure and certain relief for workmen injured in extra-hazardous employments and their families and dependents are hereby provided for, regardless of questions of fault and to the exclusion of every other remedy, except as provided in this Act.

personal injury sustained by the employee arising out of and in the course of his employment without regard to fault as a cause of such injury, except where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty. Where the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employee while on duty, neither the injured employee nor any dependent of such employee shall receive compensation under this article.

*The liability prescribed by the last preceding paragraph shall be exclusive....*[3] [Emphasis supplied.]

Aside from the exceptions created by the Act itself, the terms of the Act are the exclusive remedy of employees who come within its jurisdiction. *Lowery v. McCormick Asbestos Co.*, 300 Md. 28, 40–41, 475 A.2d 1168, 1175 (1984); *Wood, supra,* 260 Md. at 661, 273 A.2d at 131; *Victory Sparkler Co., supra,* 147 Md. at 375, 128 A. at 637. The relevant exception to the Workmen's Compensation Act in the case at bar is Art. 101, § 44, which provides:

If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child, children or dependents of the employee shall have the privilege either to take under this article or have cause of action against such employer, as if this article had not been passed.

---

3. Additionally, Art. 101, § 36 provides in part:
   Each employee (or in the case of death his family or dependents) entitled to receive compensation under this article shall receive the same in accordance with the following schedule and except as in this article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever.

Mrs. Johnson argues that the legislature intended that the deliberate intent necessary to take an injury out of the workmen's compensation limitation exists when it is shown that an employer was grossly negligent and provided unsafe working conditions.

This Court addressed this "deliberate intention" issue previously in *Hagerstown v. Schreiner*, 135 Md. 650, 109 A. 464 (1920) and held: "As against an employer who has provided the insurance and who has not 'from deliberate intention produced such injury, or death' the remedy by compensation under the act is exclusive." *Id.* at 653, 109 A. at 465. The Court has not specifically addressed what the term "deliberate intention" means. There are many cases from other jurisdictions which have addressed this issue, however, and the vast majority of these jurisdictions have concluded that a "deliberate intention" to cause an employee's injury implies the formation by the employer of a specific intention to cause injury or death combined with some action aimed at accomplishing such result, as opposed to mere employer negligence or gross negligence.

Only two jurisdictions, West Virginia and Ohio, have decided that something less than an outright specific intention on the employer's part to cause an injury may be sufficient to satisfy the "deliberate intention" requirement. Mrs. Johnson relies on the principal case from each of these states to sustain her argument that it was error to dismiss her suit.

In *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), the Supreme Court of Appeals of West Virginia held that the statute permitting damage suits against the employer "if the injury or death of such employee results from the deliberate intent of the employer to produce such injury or death" also permits suit for "wilful, wanton and reckless misconduct." *Id.* at 706, 246 S.E.2d at

914. Thus, the high court held that the three cases [4] it had consolidated were erroneously dismissed.

In *Blankenship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), the Ohio Supreme Court held that employees and their spouses could sue their employer in tort for the intentional use of chemicals the employer knew were harmful, and for failure to warn and to report the dangerous conditions to federal and state agencies as required. Ohio apparently allows an intentional tort action to proceed where the employer knows or should know that harm may occur as a consequence of work at an unsafe work place.

■ Johnson essentially is asking this Court to broaden Maryland's intentional tort exception and to adopt the minority view. We decline her invitation. Article 101 of the Code has been the law of Maryland for seventy years and has not been modified by the legislature or the courts to permit a lawsuit against a negligent employer. Under Maryland law, the exclusive remedy for an employee who is injured during the course and within the scope of his employment is to file a claim under the provisions of the Workmen's Compensation Law. In other words, as we see it, § 15 of the Act does not permit the "common law" liability of the employer to include accidental injuries caused by the gross, wanton, wilful or reckless negligence of the employer, except when such injury is intentional as described in § 44.

Reckless, wanton or wilful misconduct differs from intentional wrongdoing. As stated in Comment f of the Restatement (Second) of Torts, § 500 (1965):

---

**4.** In *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978), the appellate court consolidated three cases. The cases involved, respectively, an employee injured by a table saw, a worker killed when a construction platform dislodged, and a worker killed when crushed by falling slate. The issue in each case was whether the employee was injured or killed as the result of a deliberate intent on the part of the employer.

While an act to be reckless must be intended by the actor, *the actor does not intend to cause the harm which results from it.* It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results. [Emphasis supplied.]

Professor Larson puts it this way:

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, *wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.*

2A A. Larson, *supra*, § 68.13, at 13–22 to 26 (emphasis supplied, footnotes omitted).

In describing intentionally tortious conduct, the late Dean Prosser noted:

"Intent" is the word commonly used to describe the purpose to bring about *stated physical consequences....*

    *    *    *    *    *    *

[I]ntent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.

*Prosser and Keeton, supra,* § 8 (emphasis in original).

■ Mrs. Johnson requests the Court to hold: (1) that the deliberate intention exception of Art. 101, § 44 does not require the allegation or proof of the employer's actual intent to injure, but requires only that the employer intentionally do the act which happens to cause injury or death;

and (2) that the deliberate intention exception includes wilful, wanton, or reckless conduct undertaken with a knowledge and appreciation of a high degree of risk to another. We decline to so hold.

We believe that our legislature purposefully selected the distinct legal concept of deliberate intent and intended that term to have its commonly understood meaning. To bypass the exclusivity provided by a workmen's compensation statute such as ours, the complaint must be based upon allegations of an intentional or deliberate act by the employer with a desire to bring about the consequences of the act.

■ In this case, there are no facts alleged to show that the employer had a "desire" to bring about the consequences of the acts or that the acts were premeditated with the specific intent to injure Rodney. Here, the employer's failure to warn of the dangerous electrical lines or failure to provide safe conditions, deliberately placing Rodney in a dangerous position and wilfully violating governmental regulations, does not constitute an intentional tort for purposes of overcoming the exclusivity provision of the Workmen's Compensation Act.

Cases from other jurisdictions since *Mandolidis* continue to hold that the intentional tort exception requires actual, specific and deliberate intent to injure the employee or persons in the same class as the employee.[5] In *Shearer v.*

---

**5.** *See e.g., Houston v. Bechtel Associates Professional Corp.,* 522 F.Supp. 1094 (D.D.C.1981) (employee alleging wilful, wanton and reckless exposure to silica dust could not maintain common law action); *Blade v. Anaconda Aluminum Co.* 452 N.E.2d 1036 (Ind.App.1983) (complaint alleging even gross or wanton negligence short of actual intent insufficient); *McCoy v. Liberty Foundry Co.,* 635 S.W.2d 60 (Mo.App. 1982) (because employer did not act with the "fiendish" purpose of infecting and eventually disabling plaintiff with silicosis, an action at common law could not be maintained even though the injury was the natural or strongly probable consequence of employer's actions); *Great Western Sugar Co. v. District Court,* 188 Mont. 1, 610 P.2d 717 (1980) (negligence, however wilful or wanton, not sufficient); *Kittell v. Vermont Weatherboard, Inc.,* 138 Vt. 439, 417 A.2d 926 (1980) (saw injury due to employer's wilful or wanton act not sufficient intent).

*Homestake Min. Co.,* 557 F.Supp. 549, 554 (D.S.D.1983), the U.S. District Court concluded that the South Dakota Supreme Court would reject the expansive rule of *Mandolidis.* The *Shearer* court stated that wilful, wanton or reckless misconduct does not constitute an intentional tort. *Id.* at 554 (also quoting proposition from *Prosser and Keeton, supra,* § 8, that "the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent").

Similarly, the Supreme Court of Arkansas recently reiterated the often quoted statement of Professor Larson that failure to furnish a safe place does not amount to actual intention to injure. In *Miller v. Ensco, Inc.,* 286 Ark. 458, 692 S.W.2d 615 (1985), the court held that:

> [The Employer's] failure to warn of dangers or failure to provide safe working conditions, deliberately placing the defendant in a dangerous position and wilfully violating governmental regulations, does not bring the cause of action within the ambit of an intentional tort. That type of activity by an employer, even where flagrant, does not constitute an intentional tort for purposes of the exclusivity provision of the worker's compensation act.

*Id.* at 461, 692 S.W.2d at 617.

In *Prescott v. United States,* 523 F.Supp. 918 (D.Nev. 1981), the employer had wilfully and intentionally sent the plaintiff onto a nuclear test area immediately after detonations to retrieve test instruments. The court, in interpreting Nevada law, held that the employer's actions did not constitute an intentional tort outside coverage of the Nevada Occupational Disease Act, notwithstanding the allegation that the employer was aware of potential hazards to the employee. *Id.* at 927–28.

The United States District Court for the District of Maine in *Austin v. Johns-Manville Sales Corp.,* 508 F.Supp. 313 (D.Me.1981), decided that "nothing short of a specific intent to injure an employee falls outside the scope of the [Longshoremen's and Harbor Workers' Compensation Act, 33

U.S.C. § 905(a) ]." *Id.* The court stated that reckless, wanton or wilful misconduct such as was alleged before it differs from intentional wrongdoing and held that "absent such specific intent [to injure], an employee's right to compensation is his exclusive remedy against his employer for injuries covered by [the Longshoremen's Act] and comparable state workmen's compensation acts." *Id.*

In *Hatcher v. Bullard Co.*, 39 Conn.Sup. 250, 477 A.2d 1035 (1984), an employee's widow brought an action against the employer for the death of her husband. The issue before the court was whether an intentional, wilful or wanton violation of OSHA safety regulations excepts the matter from the scope of the state's workers' compensation act and thus enables the injured employee to pursue common law remedies. The court stated that its workers' compensation act was to be construed liberally to carry into effect the beneficent purpose contemplated by workers' compensation law. *Id.* at 253, 477 A.2d at 1038. The court set forth that the purpose of its act was " 'to secure a certain speedy and inexpensive procedure for compensation to the employee for injuries, regardless of fault.... By balancing the interests of the employee in a certain and speedy recovery, with the employer's interests in limited liability, the statute benefits employers, employees and the public as well.' " *Id.* at 255, 477 A.2d at 1038–39 (quoting *Shearer v. Homestake Min. Co.*, 557 F.Supp. 549, 553 (D.S.D.1983)). The court concluded that any narrowing of the jurisdiction of their workers' compensation act should be accomplished by the state's legislature because any limiting by the court of the act's exclusive jurisdiction "would undermine the balance of the interests struck by the act." 39 Conn.Sup. at 256, 477 A.2d at 1039.

In *Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439, 417 A.2d 926 (1980), the plaintiff alleged that he was an inexperienced workman sent to work without instructions or warnings at a machine from which the employer had stripped all safety devices, and as a result, he suffered

severe injuries. The question on appeal was whether the plaintiff's complaint stated a cause of action outside the scope of Vermont's workmen's compensation act. The court stated that the purpose of its act was "to provide, not only for the employees a remedy which is both expeditious and independent of proof of fault, but also for employers, a liability which is limited and determinate." *Id.* at 441, 417 A.2d at 927. The court concluded that since Vermont's legislature had "determined that the benefits derived from quick and certain basic compensation outweigh those from delayed and contingent full compensation, [the court was] unwilling to disturb this choice." *Id.* Therefore, the court held that nothing short of proof that the employer specifically intended to injure the employee would remove a work-related injury from the scope of the act. *Id.*

■ We agree with the majority view, and under the facts of this case we conclude that an employer has acted with "deliberate intention" pursuant to § 44 only where that employer had determined to injure an employee or employees within the same class and used some means to accomplish this goal. In the case sub judice, Johnson has failed to allege sufficient facts to raise a genuine issue of material fact that the employer decided to injure him or an employee like him, that the employer performed some act to accomplish this goal, and that as a direct result of the employer's act he was injured. The facts alleged by the appellant show only that Johnson's death was of an accidental nature. There are no facts alleged which indicate that Mountaire had any deliberate intention to produce the injury.

Under these allegations, the injury to the employee does not fall within the exception of § 44, and Johnson's suit for wrongful death and survivorship was properly dismissed by the circuit court.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.