NIEMEYER, Circuit Judge,
concurring in Part II of Judge Motz’ opinion and dissenting from the judgment:
I concur in Part II of Judge Motz’ opinion, which affirms dismissal of Dominique Gantt’s claims under the Fifth Amendment and Title VII of the Civil Rights Act of 1964. But with respect to Gantt’s claim for intentional infliction of emotional distress under state law, I would affirm the judgment of the district court, but on different grounds. Gantt has not shown that Security USA, Inc. (“Security USA”), her employer, “deliberately intended” to cause the injury that Gantt suffered, and therefore Gantt’s state law claim against Security USA can only be made as a claim for benefits under the Maryland Workers’ Compensation Act. Accordingly, I dissent from the judgment remanding this case to the district court for further proceedings.
I
Security USA, which contracted with the federal government to supply security for the New Carrollton federal building in Lanham, Maryland, employed Dominique Gantt as a security guard and assigned her to the New Carrollton building.
While assigned to the New Carrollton building, Gantt advised her employer that she had obtained a protective order against her boyfriend, Gary Sheppard, prohibiting him from contacting Gantt anywhere, including at her place of employment, and Gantt provided her supervisors with a copy of the protective order. Security USA’s Project Manager Earl Wood instructed all Security USA supervisors, including Gantt’s supervisor, Sergeant Angela Claggett, to assign Gantt to an inside post to deny Sheppard access should he violate the protective order.
Sometime later, in November 1996, Sergeant Claggett transferred a telephone call from Sheppard to Gantt even though Clag-gett knew that it violated the protective order. Claggett, who knew Sheppard from another security job at which she worked, explained to Gantt, “[A]ll he wants to do is talk to you.” Claggett urged Gantt, “[J]ust talk to him.” Gantt took the telephone call, told Sheppard not to call again, and hung up. After hanging up, Gantt reported the call to Project Manager Wood.
Several weeks later, on December 6, 1999, Sergeant Claggett assigned Gantt to guard the underground garage, Post 9, which was an “outside post.” Within 15 minutes of taking the post, Gantt received another telephone call from Sheppard. After the call, Gantt notified Claggett of the call and requested to be reassigned to a location inside the building, in accordance with Project Manager Wood’s order. Sergeant Claggett insisted that Gantt remain at her post.
Approximately 45 minutes later, Sheppard arrived at the New Carrollton building and went to Post 9, where he physically abducted Gantt with a shotgun, forced *558 her into his van, and drove away. When Sergeant Claggett was advised of the abduction, she refused to call the police, stating, “[N]o, we don’t need to call the police because [Sheppard] doesn’t want to hurt her, he just wants to talk to her.” But five to ten minutes later, she nevertheless did call the police.
In the meantime, Sheppard drove Gantt from the New Carrollton building into the District of Columbia, Maryland, and Delaware. He verbally abused Gantt, threatened her, physically assaulted her, and raped her. In order to extricate herself from Sheppard’s control, Gantt promised Sheppard a reconciliation if he would voluntarily turn himself in to the police. When he complied, the police arrested him.
Gantt commenced this action against Security USA alleging a violation of the Fifth Amendment, a violation of Title VII of the Civil Rights Act, and the commission of two state law torts — intentional infliction of emotional distress and negligence. The district court dismissed the federal law counts and the negligence count on the ground that they failed to state claims upon which relief could be granted. With respect to the claim for intentional infliction of emotional distress, the district court granted summary judgment in favor of Security USA. This appeal followed.
II
With respect to Gantt’s appeal from the district court’s dismissal of her federal claims, I concur in what Judge Motz has written in Part II of her opinion, and therefore, I do not address those claims any further. Gantt did not appeal the dismissal of her negligence claim.
III
With respect to Gantt’s claim that Security USA is liable to Gantt on her claim of intentional infliction of emotional distress, I would affirm the judgment of the district court for the reasons that follow.
The parties seem to agree that Gantt’s claims against Security USA for her injuries arose “in the course of’ her employment with Security USA. See Knoche v. Cox, 282 Md. 447, 385 A.2d 1179, 1182 (1978) (“ ‘[A]n injury arises “in the course of employment” when it occurs within the period of employment at a place where the employee reasonably may be in the performance of [her] duties and while [she] is fulfilling those duties or engaged in doing something incident thereto’ ” (quoting Watson v. Grimm, 200 Md. 461, 90 A.2d 180, 183 (1952))). The district court observed likewise:
It is undisputed that Gantt suffered her injuries at the hands of a third party, Sheppard, while at work, and that she was on duty at the time and expected to be at her post.
Thus, Gantt was an employee covered by the Maryland Workers’ Compensation Act. See Md.Code Ann., Lab. & Empl. § 9-101(b), (f).
Except for specified intentional conduct, the Maryland Workers’ Compensation Act provides the exclusive remedy for injuries sustained by an employee in the course of employment. See id. § 9-509(a), (b) (“The liability of an employer under this title is exclusive [and] the compensation provided under this title to a covered employee ... is in place of any right of action against any person”); Hastings v. Mechalske, 336 Md. 663, 650 A.2d 274, 278 (1994). Under the Act, Security USA would thus have to compensate Gantt for any “accidental personal injury” that Gantt were to sustain in the course of her employment, regardless of fault as to the cause of injury. See DeBusk v. Johns Hopkins Hosp., 342 Md. 432, 677 A.2d 73, 76-77 (1996). “Aceiden- *559 tal personal injury” occurs and the Workers’ Compensation Act applies even to injuries to an employee willfully caused by a third person, so long as the injury was sustained in the course of employment. See Edgewood Nursing Home v. Maxwell, 282 Md. 422, 384 A.2d 748, 753 (1978) (applying the Act to a nurse killed by her boyfriend for reasons unrelated to her job). Accordingly, Gantt’s claim for intentional infliction of emotional distress against Security USA is barred by the immunity conferred by the Act unless her claim falls within the narrow exception provided by § 9-509(d) of the Act, which authorizes common law claims for injuries caused by the deliberate conduct of her employer. That section provides:
If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child, or dependant of the covered employee may:
(1) bring a claim for compensation under this title; or
(2) bring an action for damages against the employer.
Md.Code Ann., Lab. & Empl. § 9-509(d). This exception to the immunity from common law liability requires that the injury to the employee be the result of the employer’s deliberate intent to injure, not simply deliberate conduct. The Act links the injury with the specific intent to bring about that injury. While the plain language of § 9-509(d) imposes that linkage, any doubt is removed by the decision in Johnson v. Mountaire Farms, 305 Md. 246, 503 A.2d 708 (1986). In Johnson, the Maryland Court of Appeals held that a suit against an employer for the death of a worker where the employer placed the worker in dangerous conditions did not qualify for the “deliberate intention” exception to the Maryland Workers’ Compensation Act and thus was barred. Interpreting the antecedent to § 9-509(d) (Md. AnmCode art. 101, § 44),* the court embraced the majority view that “ ‘deliberate intention’ ... implies the formation by the employer of a specific intention to cause injury or death combined with some action aimed as accomplishing such result.” Johnson, 503 A.2d at 711 (emphasis added). The court specifically rejected the minority approach of West Virginia, which interpreted “deliberate intent” to include “ ‘wilful, wanton and reckless misconduct,’ ” id. (quoting Mandolidis v. Elkins Indus., Inc., 161 W.Va. 695, 246 S.E.2d 907, 914 (1978)). In applying this specific-intent-to-injure requirement, the Court of Appeals in Johnson rejected the plaintiffs argument that “deliberate intention ... requires only that the employer intentionally do the act which happens to cause injury,” adopting rather the interpretation that the deliberate intention exception “requires actual, specific and deliberate intent to injure the employee.” Id. at 711-12; see also Federated Dep’t Stores, Inc. v. Le, 324 Md. 71, 595 A.2d 1067, 1074 (1991).
Turning to this case, if Security USA’s conduct is analyzed by the actions of its Project Manager Wood, then there is undoubtedly no liability for a common law claim. Wood expressly instructed Sergeant Claggett to assign Gantt to an inside post, undoubtedly to protect, not to injure Gantt. Claggett’s disobedience of Wood’s direction may be her deliberate conduct, but because that conduct was in contra *560 diction of Wood’s order, it cannot be considered as evidence that Security USA, Gantt’s employer, deliberately intended to injure Gantt. To the contrary, Security USA’s intent is manifested by the order of Project Manager Wood, which must be construed as an order to protect Gantt from harm.
Not all conduct by every employee is imputed to the employer for the purposes of the Maryland Workers’ Compensation Act. Maryland courts historically restricted liability to acts authorized by the employer or performed by the employer’s alter ego. See, e.g., Schatz v. York Steak House Sys., Inc., 51 Md.App. 494, 444 A.2d 1045 (1982) (concluding that the conduct of an assistant manager of a restaurant in raping a fellow employee was not the intentional act of the employer so as to constitute the deliberately intended conduct of employer under the Act); Cont’l Cas. Co. v. Mirabile, 52 Md.App. 387, 449 A.2d 1176 (1982) (concluding that the deliberate conduct of a supervisor directed at an employee did not amount to the intentional conduct of employer under the Act). Although the Maryland Court of Appeals in Federated Dep’t Stores cast doubt on the “alter ego” approach, the court also noted that “it may well be that the General Assembly ... intended something less than the full sweep of common law respon-deat superior liability” in drafting the Workers’ Compensation Act. 595 A.2d at 1074. In this case, Claggett was the lowest level supervisor of the New Carrollton building reporting directly to a general local supervisor and then indirectly to Project Manager Wood. Her conduct as it related to Gantt was not only unauthorized, but expressly disallowed, by her own supervisor. Under any analysis of Security USA’s common law liability under Maryland’s Workers’ Compensation Act for its employees’ conduct, Claggett’s overt disobedience to the order of Project Manager Wood should not be imputed to Security USA.
But even if we were to impute Sergeant Claggett’s conduct to Security USA, the evidence does not support a claim that Sergeant Claggett “deliberately intended” the injury suffered by Gantt. To the contrary, the only evidence in the record supports a conclusion that Sergeant Claggett personally knew Sheppard and believed that he had only intended to talk to Gantt and work things out. I agree with the district court’s summary of the record where the court concluded:
[Tjaking as true that Claggett assigned Plaintiff to the outside post and failed to call the police after the abduction, there is still no evidence to suggest that Clag-gett intended for Plaintiff to suffer, or even recklessly disregarded the possibility of, the severe emotional trauma of being abducted, assaulted, threatened and raped. To the contrary, the evidence agreed to by Plaintiff in her statement of undisputed facts shows that Claggett told Harvey that Sheppard only wanted to talk to Plaintiff and would not hurt her.
At most, one could conclude from the record that Sergeant Claggett was negligent or even reckless. But a common law claim for injury from even wanton or reckless conduct is barred by the Maryland Workers’ Compensation Act. See Johnson, 503 A.2d at 711 (barring common law claims based on “gross, wanton, wilful or reckless” conduct). Thus, regardless of whether or how Claggett’s conduct might satisfy Maryland’s requirements for intentional infliction of emotional distress, Clag-gett’s conduct, as demonstrated by the record in this case, does not allow Gantt to escape from the bar imposed by the Maryland Workers’ Compensation Act because that Act requires that the employer deliberately intend to bring about the injury of *561 which Gantt complained, and there is no evidence to support that conclusion even if Claggett’s conduct were imputable to Security USA.
My colleagues suggest that factual questions remain about Claggett’s intent to injure based on circumstances that Claggett knew of facts underlying the protective order against Sheppard and that Claggett must have intended the uncomfortable anxiety that Gantt suffered in manning Post 9 before Sheppard arrived. Were such injury the totality of the matter, it surely would fall short of constituting injury for purposes of either the Maryland Workers’ Compensation Act or intentional infliction of emotional distress. Moreover, the record in this case provides no support, absent speculation, that Claggett even intended to injure Gantt by creating anxiety for her. To the contrary, the record shows that Claggett was intending to act, however clumsily, as counselor or peacemaker, assuring Gantt that Sheppard only wanted to talk to her and repair their relationship. Claggett’s misguided judgment and perhaps even recklessness, however, cannot support a finding that she deliberately intended to injure Gantt. See Johnson, 503 A.2d at 711.
Because the conduct alleged and established on the record for summary judgment does not fit the narrow exception to common law immunity provided by the Maryland Workers’ Compensation Act, Gantt’s claim against Security USA must be for benefits under that Act, and I would therefore affirm the district court’s summary judgment in favor of Security USA on Gantt’s common law claim, but for reasons different from those given by the district court.

 In the recodification of the Maryland Code in 1991, Article 101 was placed in the Labor and Employment Article as § 9-101 et seq., and § 44 was revised and included as § 9-509(d) with the intent of making no "substantive change." See 1991 Md. Laws ch. 8, § 2 (re-visor's note).