RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

GAYLE LINKLETTER,

*Plaintiff-Appellant,*

*v.*

No. 16-3265

WESTERN & SOUTHERN FINANCIAL GROUP, INC.; KIM CHIODI,

*Defendants-Appellees.*

───────────────

Appeal from the United States District Court for
the Southern District of Ohio at Cincinnati.
No. 1:15-cv-00162—Timothy S. Black, District Judge.

Argued: January 24, 2017

Decided and Filed: March 23, 2017

Before: MERRITT, CLAY, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Ted L. Wills, Cincinnati, Ohio, for Appellant. Deborah S. Adams, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Ted L. Wills, Cincinnati, Ohio, Jennifer L. Branch, GERHARDSTEIN & BRANCH CO. LPA, Cincinnati, Ohio, for Appellant. Deborah S. Adams, Neal Shah, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellees.

───────────────

## OPINION

───────────────

MERRITT, Circuit Judge. In this Fair Housing Act case that was dismissed for failure to state a valid claim, the plaintiff, Gayle Linkletter, signed an online petition supporting a

Cincinnati women's shelter, the Anna Louise Inn, after she had accepted a position with the defendant, Western & Southern.  Western & Southern rescinded its employment agreement with Linkletter because she signed the petition while the company was engaged in a lengthy real estate dispute with the women's shelter over its location in the neighborhood.  Residents of the shelter had previously sued Western & Southern in federal court under the Fair Housing Act, particularly 42 U.S.C. § 3617.  As a result of that earlier litigation, Western & Southern reached a settlement with the shelter and purchased the property.  After Linkletter's employment contract was rescinded she sued Western & Southern and its employee, Kim Chiodi, under § 3617 and the state analog in the Ohio Civil Rights Act.  Section 3617 states in the part relevant to this case as follows:

> It shall be unlawful to . . . interfere with any person . . . on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.[1]  Specifically, Linkletter claims her petition-signing encouraged the residents of the women's shelter in their rights granted by § 3604, involving discrimination in the rental or sale of housing:

> [I]t shall be unlawful . . . (a) To refuse to sell or rent . . . or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . sex . . . . (b) To discriminate . . . in the provision of services or facilities in connection therewith, because of . . . sex . . . . (c) To make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . sex . . . . (d) To represent to any person because of . . . sex . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available . . . . (e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular . . . sex . . . .

42 U.S.C. § 3604(a)–(e).

We conclude that Linkletter presents a plausible claim for relief.  Taking the facts in a light most favorable to the non-moving party, Linkletter's petition-signing supporting the shelter

---

[1]Section 3617 reads in full: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.

fits within the meaning of the phrase "aided or encouraged" and the defendants' rescission of their employment agreement constitutes an "interference" with that encouragement. Accordingly, the district court was in error when it granted the defendants' motion to dismiss, and we reverse the judgment.

## I.  Background

Western & Southern Financial Group, Inc. is an insurance company located in the Lytle Park neighborhood of Cincinnati, Ohio.  Between 1997 and 2006, Linkletter worked as an employee of Western & Southern.  The parties ended the first employment relationship amicably.  In May 2014, Linkletter's former colleague at Western & Southern contacted her about a job opportunity at the company as a Senior Corporate Communications specialist.  After several interviews, Linkletter accepted the position.

On September 8, 2014, before Linkletter began working, Western & Southern's Senior Vice President of Human Resources, Kim Chiodi, called Linkletter to notify her that Western & Southern had rescinded the employment offer.  Linkletter claims that Chiodi justified the rescission due to Linkletter having taken "a position that was contrary to Western & Southern."  Specifically, Chiodi mentioned Linkletter's support for the Anna Louise Inn.

Western & Southern had been in a controversial real estate dispute with the Anna Louise Inn women's shelter since 2011.  *See Cooper v. Western & Southern Financial Group, Inc.*, 847 F. Supp. 2d 1031, 1032–33 (S.D. Ohio 2012).  The shelter, whose mission is "to provide women with safe, decent, and affordable housing, without regard to their economic condition, race, or lack of employment," was located in Lytle Park, the same neighborhood as Western & Southern.  *Id.* at 1033.  The residents of the shelter accused Western & Southern of violating the Fair Housing Act and the Ohio Civil Rights Act by attempting to illegally pressure them out of the neighborhood.  The presence of the shelter interfered with Western & Southern's "master plan for [that] end of town," and the company was frustrated in attempting to buy the land where the shelter stood.  In December 2010, the president of the company that controls Western & Southern's real estate holdings sent a letter to Cincinnati's mayor, arguing that the shelter was

"not appropriate for the Lytle Park neighborhood" and objecting to "85 low-income permanent housing units for women" and "housing for up to 25 recovering prostitutes."

After the shelter refused to sell, Western & Southern engaged in a campaign to force a sale of the property and get the Anna Louise Inn out of the neighborhood, and the shelter's residents sued. When Western & Southern filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), the district court denied the motion, stating that the residents had sufficiently pled the elements of a § 3617 claim. *Cooper*, 847 F. Supp. 2d at 1040. In its decision, the district court cited allegations that Western & Southern pursued frivolous appeals of zoning decisions affecting the renovation of the Inn, photographed residents of the shelter without their permission, and falsely accused residents of engaging in criminal activity and other inappropriate behavior. *Id.* at 1039. The court found that "[t]hese actions could be construed as intimidating, harassing, and threatening to the residents of the Inn . . . . In addition, plaintiffs allege facts that, if accepted as true, are sufficient to support a finding that Western & Southern has exercised its powers with a discriminatory animus." *Id*. The parties eventually reached a settlement in which Western & Southern bought the property and removed the shelter from the Lytle Park neighborhood, and the suit was dismissed.

On February 21, 2012, while the dispute between the shelter and Western & Southern was ongoing, Linkletter signed a petition expressing support for the shelter. The petition was titled, "The Anna Louise Inn has my Support!" and the text stated, "I support the mission of the Anna Louise Inn, which has provided safe and affordable housing for women for 102 years in its current location." As a signor, Linkletter also stated that she appreciated "that women in Cincinnati have an option for permanent supportive housing," and that "[the] Anna Louise Inn should remain where it is and continue its mission of providing safe and affordable housing for single women." The Inn posted the petition online with the names of the signors, including Linkletter.

After the termination of her employment contract in 2014, Linkletter sued Western & Southern and its employee, Kim Chiodi. At the district court, Linkletter claimed that the rescission of her contract in response to her supporting the housing rights of the Inn's female

residents violated § 3617 of the Fair Housing Act.**²**  Linkletter argued that by rescinding the contract, the defendants interfered with her employment because she encouraged the women of the Anna Louise Inn in the exercise of their rights under §§ 3603–06.  Specifically Linkletter claimed she encouraged the rights in § 3604(a)–(e) pertaining to anti-discrimination in the rental or sale of housing.  42 U.S.C. § 3604.  The provision Linkletter sued under, Section 3617, protects individuals who "aided or encouraged" the rights protected by § 3604.  42 U.S.C. § 3617.

The defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The district court granted the motion, finding that Linkletter did not state a claim for relief.  Without engaging in a trial or a fact-finding process, the district court agreed with the defendants that Linkletter did not "aid or encourage" the women of the Anna Louise Inn as contemplated by the statute, that the housing rights protected by § 3604 were not at issue, and that the defendants as "non-houser employers" did not fall within the scope of the statute.

The district court also dismissed Linkletter's Ohio Civil Rights Act claims under O.R.C. § 4112.02(H)(12) and O.R.C. § 4112.02(I).  The language in O.R.C. § 4112.02(H)(12) is nearly identical to the federal statute, and the district court dismissed the § 4112.02(H)(12) claim for the same reasons it articulated while analyzing the federal Fair Housing Act.  The district court's dismissal of Linkletter's claim under O.R.C. § 4112.02(I) appears in a footnote, holding that Linkletter never established she engaged in activity protected under the statute.  *See Linkletter v. Western & Southern Financial Group, Inc.*, No. 1:15-cv-162, 2016 WL 659136 at *n.7 (S.D. Ohio Feb. 18, 2016).

Linkletter now appeals, demanding damages, reinstatement to employment with Western & Southern, and a declaration that Western & Southern utilized an illegal employment screening practice by disqualifying potential employees that advocate for the Fair Housing Act and the Ohio Civil Rights Act.

---

**²**At the district court and in her brief, Linkletter highlights more than just her petition-signing as evidence of her "public support" for the Anna Louise women.  Linkletter believes that the § 3617 analysis should include her annual financial contributions to the Inn and an incident when she thanked a man on the street who was holding a sign in support of the Inn.  There is no specific allegation that the defendants were aware of these actions, even accepting the facts pled in a light most favorable to the plaintiff.  Since Linkletter fails to explain why these other actions should be included in the analysis, they will not be considered.

## II.  Standard of Review

We review a district court's grant of a motion to dismiss de novo.  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).  When reviewing the decision to grant a Fed. R. Civ. P. 12(b)(6) motion, we accept the facts in the light most favorable to the non-moving party, taking all well-pleaded factual allegations as true.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  The plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  Fair Housing Act

The purpose of the Fair Housing Act is "to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601.  To that end, the Act prohibits discrimination against "any person because of race, color, religion, sex, familial status, or national origin" in the rental or sale of housing.  42 U.S.C. § 3604(a).  In keeping with the law's overarching purpose, 42 U.S.C. § 3617 protects plaintiffs who "aided or encouraged" the housing rights enumerated in the statute.  *Id*.  Essentially, § 3617 allows a plaintiff to step into the shoes of the victims of certain types of housing discrimination when the plaintiff faces retribution for providing encouragement to the victims.  As part of a remedial statute, the language of § 3617 should be broadly interpreted and applied with the Fair Housing Act's purpose in mind.  *See Mich. Prot. and Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994); *see also Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972), abrogated on other grounds by *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011).  ("The language of the Act is broad and inclusive.").

"The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'"  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).  Linkletter claims that by signing a petition she "encouraged" women to pursue their right to be free from sex

discrimination in the rental or sale of housing under § 3604, and that the defendants illegally retaliated by "interfering" with her employment.  She does not accuse them of discriminating against her or illegally interfering with her housing rights.  Rather, she claims that the defendants interfered with her employment because she aided or encouraged women in the exercise of their housing rights under § 3604.

### A.  "Interfere with"

The rescission of an employment contract can qualify as "interference" within the meaning of the statute.  *See Walker v. City of Lakewood*, 272 F.3d 1114, 1128–30 (9th Cir. 2001) (explaining that interference refers to "hampering an activity or process" including frustrating the renewal of employment contracts).  The complaint states that Linkletter and Western & Southern reached an employment agreement.  After Linkletter accepted the job, Western & Southern's employee Chiodi terminated that employment agreement.  It would be an understatement to say that the defendants' actions "hampered" Linkletter's employment process.  *See id.* The defendants' interference left Linkletter with a distinct and palpable injury.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).

The Department of Housing and Urban Development has also interpreted the Fair Housing Act in a manner consistent with the proposition that "interference" can refer to employment disputes.  It is illegal to "[t]hreaten[] an employee or agent with dismissal or an adverse employment action, or [to] tak[e] such adverse employment action, for any effort to assist a person seeking access to the sale or rental of a dwelling or seeking access to any residential real estate-related transaction, because of the . . . sex . . . of that person . . . ." 24 C.F.R. § 100.400(c)(3).

Moreover, the language "interfere with" should be broadly interpreted to reach all practices which have the effect of interfering with housing rights.  *See Babin*, 18 F.3d at 347 (citing *United States v. Am. Inst. of Real Estate Appraisers*, 442 F. Supp. 1072, 1079 (N.D. Ill. 1977)).  Therefore the scope of the statute extends to employers who cancel contracts in retaliation for Fair Housing Act advocacy.  *See Walker*, 272 F.3d at 1126.  As the interference alleged in the present case fits this description, it appears to be covered by the statute.

### B.  "Aided or Encouraged"

To qualify for a § 3617 claim, a defendant's "interference" must still be in retaliation for a plaintiff having "aided or encouraged" another's enjoyment of the housing rights protected by §§ 3603–06.  42 U.S.C. § 3617.  Linkletter's action, signing a petition, is seemingly innocuous.  However the language and timing of the petition demonstrate that it existed to encourage the women to remain in their residence in opposition to the alleged discrimination by Western & Southern.  The defendants point out that the petition did not specifically mention Western & Southern.   But while the petition did not explicitly mention the dispute with Western & Southern, the context suggests that the litigation with Western & Southern was the basis for the petition.  The petition supported keeping the shelter at the "current location" in "Lytle Park," and that "[the] Anna Louise Inn should remain where it is and continue its mission of providing safe and affordable housing for single women."  For purposes of analyzing the defendants' motion to dismiss, the court should assume that Linkletter signed the petition to "encourage" the women in their dispute with Western & Southern.

The district court noted that this act of encouragement by Linkletter is minor comparatively speaking.  *See Linkletter*, 2016 WL 659136 at *5.  However, the defendants fail to explain why a petition-signing is not encouragement beyond vague assertions that the action lacks "concreteness" or "directness."  The allegations in the complaint show that the action was concrete and important enough to alert Linkletter's future employer to her public support, and result in her termination.  If the encouragement is sufficiently concrete to lead to an individual's firing, it is sufficiently concrete to state a plausible claim.

Looking to the "structure, history, and purpose" of the statute, *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014), section 3617 was meant to protect assistance and advocacy for Fair Housing Act rights.  A plain-meaning understanding of the word "encouraged" clearly covers the act of signing a petition advocating support for a women's shelter.  Therefore, interpreting "encouraged" to include Linkletter's action is in keeping with both the plain meaning of the word and the overall purpose of the Fair Housing Act.  *See Ron Pair Enters., Inc.*, 489 U.S. at 241–42.

### C.  Nexus to 42 U.S.C. § 3604

Section 3617 requires a nexus with the rights protected by §§ 3603–06, without requiring an actual violation of the underlying provisions.  *See Hidden Village, LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528 (6th Cir. 2013).   In the present case, Linkletter claims her signing the petition implicated the rights of women against discrimination in the rental or sale of housing under § 3604.  The litigation between the women's shelter and Western & Southern is well documented in the *Cooper* case, which described the housing dispute that motivated Linkletter's petition-signing.  847 F. Supp. 2d at 1039–40.  Just as the female residents of the Anna Louise Inn in the *Cooper* case stated a plausible § 3617 claim for relief based on their own § 3604 rights, so too Linkletter states a plausible claim for relief in facing retaliation for encouraging those rights.  *See id.* at 1040 (finding the shelter's residents had "alleged facts from which the Court may plausibly infer that Western & Southern is in a position directly to disrupt [the residents'] federally-protected rights to reside at the Inn . . . and that Western & Southern ha[d] exercised its powers with a discriminatory animus.").

The defendants argue that even if they fired Linkletter because she signed the petition, Western & Southern's motivation in the underlying dispute with the women's shelter was motivated by economics rather than by sex discrimination.  In the past the Sixth Circuit has required a showing of "discriminatory animus" for § 3617 claims.  *See Babin*, 18 F.3d at 347.  Discriminatory animus requires plaintiffs "to put forth 'some evidence of discriminatory *effect* or intent on the [defendant's] part.'" to survive summary judgment.  *Campbell v. Robb*, 162 F. App'x 460, 474 (6th Cir. 2006) (citing *Babin*, 18 F.3d at 347) (emphasis added).

Western & Southern's actions against the shelter as alleged in the complaint only affected one class of people—women.  The defendants assert that the motivation for attempting to remove the shelter from the neighborhood was "economic," not "sex," and that financial motives exclude the case from the type of sex discrimination forbidden by the Fair Housing Act.  But a violation of the Fair Housing Act can be shown either by proof of discriminatory animus or by proof of disparate impact or effect.  *See Inclusive Cmtys. Project, Inc. v. Tex. Dept. of Hous. and Cmty. Affairs*, 747 F.3d 275, 280 (5th Cir. 2014).  The existence of economic (or religious or moral) motivations does not protect the defendants from housing discrimination claims when

their actions had a clear discriminatory effect. Economic motivation does not cleanse discrimination. The facts alleged by Linkletter, and detailed in the underlying *Cooper* case, are sufficient to state a valid claim that Western & Southern discriminated against the women of the shelter. *See* 847 F. Supp. 2d at 1039–40.

There is also no requirement in § 3617 that the defendant-employer here operate the housing facility at issue to violate the statute. *See Farmer v. City of Cincinnati*, No. 1:04-CV-080, 2006 WL 3762131 at *8 (S.D. Ohio Dec. 21, 2006) (Fair Housing Act claims can go forward against non-housers where they, "though not owners or agents, are in a position directly to deny a member of a protected group housing rights." (quoting *Babin*, 18 F.3d at 344)). Section 3617 requires only that the plaintiff "encourage" a housing right protected by § 3604 and face retaliatory "interference" for the encouragement. *See Hidden Village, LLC*, 734 F.3d at 528–29 ("[Defendant] threatened [plaintiff] because [plaintiff] had encouraged [victim] to protect himself against discrimination relating to housing. The statute requires no more."). According to the complaint in the present case, the defendants sought to remove housing designated for a protected class from the neighborhood. As a non-houser that has allegedly denied housing rights to women, Western & Southern falls within the scope of the Fair Housing Act.

Taking the complaint in the light most favorable to the plaintiff, we do not agree with the district court that the petition-signing did not sufficiently implicate opposition to housing discrimination. A factfinder could conclude that through the campaign against the shelter, Western & Southern interfered with housing rights under § 3604, and that Linkletter encouraged those same rights under § 3617. Accordingly, Linkletter states a plausible claim for relief under the Fair Housing Act, and her claim should not have been dismissed.

### IV. Ohio Civil Rights Act

Linkletter also appeals the district court dismissal of her state claims. O.R.C. § 4112.02(H)(12); O.R.C. § 4112.02(I). The Ohio Civil Rights Act contains a provision that mirrors the federal Fair Housing Act, making it unlawful to "[c]oerce, intimidate, threaten, or interfere with any person . . . on account of that person's having exercised or enjoyed or having

aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by division (H) of this section[.]"**3** O.R.C. § 4112.02(H)(12). The statute also contains a provision that specifically outlaws retaliation for opposition to unlawful discrimination.**4** O.R.C. § 4112.02(I). On appeal, neither Linkletter nor the defendants distinguish arguments on the federal claim from the state claims. In granting the motion to dismiss, the district court cited *Ohio Civil Rights Comm'n v. Harlett* for the proposition that "[w]hen interpreting O.R.C. Chapter 4112, Ohio courts have looked to analogous federal statutes and case law for guidance." 724 N.E.2d 1242, 1244 (Ohio Ct. App. 1999). Consequently, the dismissal of Linkletter's state claims is reversed in accordance with the reversal of her federal Fair Housing Act claim.

The judgment of the district court is **REVERSED,** and we **REMAND** the case for further proceedings.

---

**3**The subsections of division (H) in O.R.C. § 4112.02 generally involve discrimination in the rental or sale of housing.

**4**O.R.C. § 4112.02(I) makes it an unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in [§ 4112.02]."