**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0019n.06

Case No. 19-5296

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| HEATHER HENRY & SHAWN HENRY, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| CMBB, LLC, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

**FILED**
Jan 14, 2020
DEBORAH S. HUNT, Clerk

**O P I N I O N**

BEFORE: McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.

**McKEAGUE, Circuit Judge.** If you're injured on the job, then workers' compensation is usually your only remedy. That's the case in Tennessee. But there is an exception: you can sue your employer in tort if the employer actually intended to injure you. Heather Henry tried to invoke this exception. In a tragic workplace accident, her arms were crushed by a 200-ton Bliss press. Henry alleged that her employer noticed that a safety mechanism in the press was not working, ordered replacement parts, but still sent her to work the machine. The district court dismissed her complaint, finding that she had not plausibly alleged that her employer actually intended to injure her. We agree. Noticing a defect and ordering replacement parts, while suggesting an awareness of the potential for injury, does not make it plausible that Ms. Henry's employer actually intended to injure her. We **AFFIRM**.

## I. Background

We recite the facts as they are alleged in the complaint. Back in November 2017, Heather Henry was working for a temp agency called Personnel Placements, LLC. Personnel Placements brought her to Chicago Metallic, a manufacturer located in Humboldt, Tennessee and owned by the defendant, CMBB, LLC.

In her job at Chicago Metallic, Ms. Henry operated a 200-ton piece of industrial equipment called a Bliss press. She put pieces of metal into the press, and the press used hydraulic pressure to shape the metal. Of course, such a powerful machine presents safety risks for its operators. To prevent injuries, the Bliss press contains a safety mechanism known as a light curtain. A functioning light curtain will detect operators inside the press and prevent it from cycling while operators are reaching inside.

Prior to Ms. Henry suffering her injuries, while a different operator was working with the Bliss press, CMBB's employees noticed that the press's light curtain was not functioning properly. So CMBB took that operator off the press and put a more experienced operator on the job. CMBB also ordered new light curtains. It did not, however, take the Bliss press out of operation.

Two weeks later, on November 15, 2017, Ms. Henry was operating the Bliss press, but the new light curtains had not yet arrived. Disaster struck. The press cycled while Ms. Henry was placing aluminum parts into it. The 200-ton machine crushed her arms, which were amputated above the elbow.

Ms. Henry and her husband Shawn then sued in Tennessee state court, Ms. Henry for her injuries and Mr. Henry for his loss of consortium. CMBB removed the case to the United States District Court for the Western District of Tennessee, invoking the court's diversity jurisdiction

under 28 U.S.C. § 1332. The district court then dismissed the complaint for failure to state a claim because it was barred by the Tennessee Workers' Compensation Act. The Henrys then appealed.

## II. Standard of Review

We review the district court's grant of a motion to dismiss de novo. *Linkletter v. W. & S. Fin. Grp., Inc.*, 851 F.3d 632, 637 (6th Cir. 2017). Under Federal Rule of Civil Procedure 12(b)(6), a complaint can be dismissed for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), the court should disregard the complaint's legal conclusions, assume that the pleaded facts are true, and determine whether the complaint contains "sufficient factual matter" to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. Analysis

The only issue in this appeal is whether the Henrys' complaint is barred by the exclusive-remedy provision of the Tennessee Workers' Compensation Act. The "rights and remedies" given to an employee under the statute "on account of personal injury or death by accident . . . shall exclude all other rights and remedies of the employee." Tenn. Code Ann. § 50-6-108(a). Thus, the workers' compensation statute "provides the exclusive remedy for an employee who is injured during the course and scope of his employment." *Valencia v. Freeland & Lemm Constr. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003).

Tennessee courts have recognized an exception to this exclusive-remedy provision, allowing employees to bring intentional-tort claims in which the employer actually intended to injure the employee. *Id.* at 242–43. "The theoretical basis for that result is that the employer cannot

allege an accident when he has intentionally committed the act." *Cooper v. Queen*, 586 S.W.2d 830, 833 (Tenn. Ct. App. 1979). In other words, it is the "*actual intention* to injure that robs the injury of accidental character." *King v. Ross Coal Co.*, 684 S.W.2d 617, 619 (Tenn. Ct. App. 1984) (quotation omitted); *see also Valencia*, 108 S.W.3d at 242; *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 47 (Tenn. Ct. App. 1993); *Mize v. Conagra, Inc.*, 734 S.W.2d 334, 336 (Tenn. Ct. App. 1987). This theoretical justification tracks the statutory language, since by its terms the statute applies only to those injuries that occur "by accident." Tenn. Code Ann. § 50-6-108(a).

The intentional-tort exception is a narrow one. *Rodgers v. GCA Servs. Grp., Inc.*, No. W2012–01173–COA–R3–CV, 2013 WL 543828, at *4 (Tenn. Ct. App. Feb. 13, 2013). It requires a heightened showing of intent, higher than the showing typically required in tort law. In *Valencia*, the Tennessee Supreme Court noted how, in the usual tort context, the "intent" element can be satisfied if the tortfeasor believes "that the consequences are substantially certain to result from [his] actions." 108 S.W.3d at 243. But "that definition is not applicable in workers' compensation cases." *Id.* Instead, "the definition of actual intent is the actual intent to injure the employee." *Id.* Accordingly, it is not enough to show that the employer breached its duty to provide a safe workplace. *Gonzales*, 857 S.W.2d at 47. Nor is it enough to show that the employer knowingly ordered the employee to perform an extremely dangerous job. *Id.* at 48. The employer must have actually intended for the employee to be injured.

The Tennessee Supreme Court's application of this rule in *Valencia* demonstrates just how strictly it is construed. There, the employee was working in an open construction trench, a work environment that presents a rather obvious safety concern: collapse. *Valencia*, 108 S.W.3d at 241. Under Tennessee's safety regulations, construction companies like the defendant in *Valencia* are required to take steps to prevent collapse, either by sloping the sides of trenches or by using

"trench-boxes." *Id.* & n.3. The employer's failure to take these steps was especially egregious for two reasons. First, it knew that its failure to reinforce the trenches was against the law: the employer had been cited twice for safety violations. *Id.* Second, the employer had trench boxes on site at the time of the accident, suggesting that it could have fixed the safety issues relatively quickly. *Id.* at 241 n.2. And yet, that conduct still was not enough to show actual intent to injure and escape the exclusive-remedy provision of the workers' compensation statute. *Id.* at 243. The court held that an employee cannot recover in tort for a workplace injury even if the employer's "conduct made injury substantially certain." *Id.*[1]

Other states have reached similar results when applying the exclusive-remedy provisions of their workers' compensation laws to bar claims. For example, in one Maryland case, the employer was cited for a "serious violation" of state safety regulations for keeping dangerous and defective electrical connections to a sump pump. *Johnson v. Montaire Farms of Delmarva, Inc.*, 503 A.2d 708, 709 (Md. 1986). After the citation, the employer reported back to the workplace safety administration that the violation had been corrected—only that wasn't true. *Id.* And two months later, a sixteen-year-old employee was electrocuted to death while using the exact same defective sump pump. *Id.* But the Maryland Court of Appeals barred his estate's wrongful-death claim because the alleged facts did not show that the employer had "deliberate intent" to injure the employee, so the exclusive-remedy provision of the workers' compensation statute applied. *Id.* at 712. For another example, one New York case involved an allegation that the employer deliberately removed the safety guards from the machine the plaintiff was operating. But even that

---

[1] For other examples of employer conduct that did not amount to an actual intent to injure, see *Gonzales*, 857 S.W.2d at 43–44 (allowing a construction crew to use dynamite even though the crewmembers were not registered, accredited, or licensed to do so); *Mize*, 734 S.W.2d at 335–36 (inadequately ventilating the facility and allowing grain dust to accumulate "in a grossly negligent manner," leading to an explosion); and *King*, 684 S.W.2d at 618 (ignoring multiple warnings and "the obvious danger to the workers" from a highwall in a strip-mining operation).

was not enough to escape the exclusive-remedy provision of the workers' compensation statute, because the employer intended only to increase profits, not injure the plaintiff. *Santiago v. Brill Monfort Co.*, 205 N.Y.S.2d 919 (N.Y. App. Div. 1960), *rev'g* 201 N.Y.S.2d 167 (N.Y. Sup. Ct. 1960), *aff'd* 176 N.E.2d 835 (N.Y. 1961). These states aren't outliers; requiring an actual intent to injure remains the majority rule. *See* 9 *Larson's Workers' Compensation Law* § 103.03 (2019). In short, in Tennessee and elsewhere, it's difficult to escape the exclusive-remedy provisions of workers' compensation statutes.

Against this backdrop, the question is whether the facts of this case, as alleged in the complaint, give rise to a reasonable inference of an actual intent to injure.[2] The Henrys argue that their case does give rise to such an inference. They argue that CMBB knew the press would injure Ms. Henry. Because CMBB noticed the defective light curtains and ordered replacements, so the argument goes, it knew that eventually the press would injure Ms. Henry.

But this does not amount to an actual intent to injure. If CMBB truly intended to injure Ms. Henry, why even order replacement light curtains? Why not simply let her use the press and wait for an accident to happen? It is not reasonable to infer that because an employer ordered replacement safety parts—designed to *prevent* workplace injuries—the employer actually intended for one of its employees to be injured before the replacement parts arrived. True, ordering new light curtains does show that CMBB acknowledged the potential for injuries. But it is not enough under Tennessee law that the employer knows there is a risk of injury—it's not even

---

[2] The parties agree that Mr. Henry's loss-of-consortium claim is derivative of his wife's, so his claim rises and falls with hers.

enough that the employer is "substantially certain" that an injury will occur. *Valencia*, 108 S.W.3d at 243. The employer must actually intend to injure the employee. *Id.*[3]

The Henrys' complaint thus does not plausibly allege an actual intent to injure. Ms. Henry's injury is a tragic one, but not one that is compensable in tort. We hold that the Henrys' complaint is barred by the exclusive-remedy provision of the Tennessee Workers' Compensation Act, Tenn. Code Ann. § 50-6-108(a). Accordingly, we **AFFIRM**.

---

[3] The dissent contends that *Valencia* does not control here because it does not address a scenario in which the employer takes affirmative steps to acknowledge the unsafe working condition. True, but the question is not simply whether the facts of this case are different from the facts of *Valencia* or other Tennessee cases. The question is whether the facts of this case give rise to a reasonable inference of an actual intent to injure—the standard announced by those Tennessee cases. And for the reasons discussed above, this case does not give rise to such an inference.

**JOHN K. BUSH, Circuit Judge, dissenting.** The facts alleged by Heather Henry in her complaint are horrific. A 200-ton aluminum press crushed both of her arms when the safety mechanism malfunctioned. Both of Henry's arms were amputated. She alleges that her employer, CMBB, LLC, knew before her injury that the safety mechanism on the aluminum press was not functioning, and that the malfunction would result in a user's arms being crushed, because CMBB had ordered the new part to fix it. Nevertheless, CMBB directed Henry to operate the press. She alleges it was no accident that CMBB placed her in harm's way.

Henry brought suit for battery in Tennessee state court, alleging in her complaint that CMBB wrongfully caused her injuries. The majority holds that the Tennessee Workers' Compensation Act provides her exclusive relief. Because I do not believe that the Tennessee Supreme Court decision on which the majority relies addresses the type of factual scenario that Henry alleges, I would certify to the Supreme Court of Tennessee the question whether the workers' compensation remedies are exclusive here.

As the majority recognizes, the Tennessee Workers' Compensation Act generally provides the only remedies for workplace injuries. It contains an exclusivity provision, which provides:

> Right to compensation exclusive.—(a) The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death ***by accident***, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death.

Tenn. Code Ann. § 50–6–108(a) (emphasis added). The scope of this provision turns on the meaning of the two words emphasized above—"by accident." *See Brown Shoe Co. v. Reed*, 350 S.W.2d 65, 69 (Tenn. 1961) (noting that the appropriate inquiry is to "see whether or not under the factual situation herein if this injury was an accident as is used in the Workmen's Compensation Law"). If the employee's injury or death was "by accident," then the Workers' Compensation Act

provides the exclusive remedies. If the injury or death occurred for a reason other than "by accident," then other remedies beyond the relief provided by the Act may be available.

We have some guidance from the Supreme Court of Tennessee as to which types of injuries are not "by accident." In *Valencia v. Freeland and Lemm Const. Co.*, 108 S.W.3d 239 (Tenn. 2003), the court determined that if the employer has "actual intent" to injure the employee, the injury is not "by accident." *See id.* at 242. The court in *Valencia* noted, however, that "actual intent" requires more than simply proof that the employer's acts were substantially certain to cause injury. *Id.* at 243. Indeed, "actual intent" requires a high level of scienter, above even gross or criminal negligence. *See id.* (citing *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 45 (Tenn. Ct. App. 1993).

The majority concludes that *Valencia* forecloses Henry's claim. I respectfully disagree. Neither *Valencia* nor the plethora of Tennessee Court of Appeals cases cited by the court in *Valencia*, address a fact pattern with a sequence of events like here, where the employer allegedly took deliberate affirmative action that recognized there was a safety problem before the injury occurred. In *Valencia* the employer had been "cited twice for violating . . . safety regulations," *id.* at 241, but there was no evidence that the employer had done anything to acknowledge a safety issue after receiving the citations. This inaction may have indicated that the employer did not consider that the condition that was the subject of the citations—construction trenches—actually needed to be changed to prevent worker injury. Based on *Valencia*, therefore, when an employer does ***nothing*** to correct an unsafe working condition, that fact alone does not make the injury non-accidental. But, *Valencia* does not address the scenario, as Henry alleges here, where an employer actually initiated action to do ***something*** to address the unsafe condition, but then nonetheless subjected the worker to that condition, and the consequent injury, before the corrective measure

was completed. These additional facts alleged by Henry may support a finding that the injury was not accidental. I am not aware of any Tennessee Supreme Court opinion that addresses a situation as Henry alleges. Therefore, I believe we should go the route of certification.

The Tennessee Supreme Court will answer questions certified from a federal court when "there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee." *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800, 803 (Tenn. 2015) (quoting Tenn. Sup. Ct. R. 23, § 1). Rule 23 allows for the Supreme Court of Tennessee to review the question I believe we should certify because its resolution would be determinative of this appeal and, as noted, there appears to be no controlling precedent in the decisions of the Supreme Court of Tennessee. As to the latter point, although *Valencia* establishes that an employer's mere knowledge of an unsafe working condition that is substantially probable to cause injury is not enough to establish "actual intent," there is no controlling precedent to answer whether the additional facts alleged by Henry—the employer's affirmative acknowledgment through its conduct that the condition is unsafe, yet subjection of the employee to the unsafe condition nonetheless—would permit a finding of non-accidental injury for which remedies outside the Workers' Compensation Act may be available.

Where, as here, a case before us presents a question of state law that is new and unsettled, certification may be appropriate. *See, e.g., Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). Although neither side asked either the district court or our court for certification, we have the power to certify questions sua sponte. *See, e.g., Am. Booksellers Found. For Free Expression v. Strickland*, 560 F.3d 443, 444 (6th Cir. 2009) (order). Also, by filing her

complaint in state court, Henry initially indicated her preference for state-court adjudication of the legal issue that I would certify.

"Federal-to-state certification is a remarkable device: workable, efficient, and guaranteed to yield a doubt-free answer." *Doe v. Mckesson*, 2019 WL 6837921, at *15 (5th Cir. Dec. 16, 2019) (Willett, J., concurring in part and dissenting in part). Certification "save[s] time, energy, and resources and helps build a cooperative judicial federalism." *In re Amazon.com, Inc.*, 942 F.3d 297 (6th Cir. 2019) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). Certification ensures that we, as federal judges "minimize the risk of unnecessary interference with the autonomy and independence of the states" in the development and exposition of their own laws. *See Lindenberg v. Jackson Nat'l Life Ins. Co.*, 91 F.3d 992, 1002 (6th Cir. 2019) (Bush, J., dissenting from denial of en banc rehearing). The Supreme Court of Tennessee, in particular, has emphasized that certification is valuable to preserve the sovereignty of the State of Tennessee, through its Supreme Court, to control the interpretation of Tennessee law. *See Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 521 (Tenn. 2006).

Because I do not agree with the majority that precedent from the Supreme Court of Tennessee squarely forecloses Henry's claim, I would seek guidance from Tennessee's highest court before ruling on the appeal of the district court's dismissal of the complaint. Therefore, I respectfully dissent.